# VIRGINIA VAN CLEAVE, Appellant, v. OSBORNE, JENKINS & GAMBOA, CHTD., Respondent.

No. 22389

October 22, 1992

840 P.2d 589

*Anderson, Pearl, Hardesty, Lyle, Murphy & Stone,* Reno, for Appellant.

*Hibbs, Roberts, Lemons, Grundy & Eisenberg,* Reno, for Respondent.

## OPINION

*Per Curiam:*

This action involving attorney's fees has its origin in an automobile rollover accident that occurred in 1979 in which appellant Virginia Van Cleave was paralyzed. The facts of the underlying suits are discussed in our prior opinions of Van Cleave v. Gamboni Construction Co., 99 Nev. 544, 665 P.2d 250 (1983); and Van Cleave v. Gamboni Construction Co., 101 Nev. 524, 706 P.2d 845 (1985). The controversy before us began when Van Cleave hired the respondent law firm of Osborne, Jenkins &

Gamboa, Chtd. ("Osborne firm") to represent her in her personal injury action.[1]

With minimal effort, the Osborne firm obtained two settlements for Van Cleave totalling $71,000. The driver of the vehicle involved in the accident paid $50,000, and Washoe County, which designed and maintained the road on which the accident occurred, paid $21,000. On the advice of the Osborne firm, Van Cleave released these parties from further liability. The Osborne firm received one-third of these settlements as attorney's fees, plus its costs, pursuant to a contingency fee contract. After settling with the driver, however, the Osborne firm realized that it had overlooked a potential avenue of relief in the driver's employer, Gamboni Construction. At the time of the accident, the driver, although in his own car returning from a weekend outing with Van Cleave, was apparently on a short deviation from the personal excursion to check on the status of the construction site where he was employed. Substantial time, effort and expense were thereafter spent on the two appeals referenced below, in determining whether Van Cleave's release of the driver of the vehicle also served to release the driver's employer, Gamboni Construction. Although we ultimately decided that Gamboni was not released by virtue of its employee's discharge, the recovery was jeopardized and the action was delayed for several years, during which Gamboni went bankrupt.

In October of 1985, a dissatisfied Van Cleave replaced the Osborne firm with the firm of Durney & Brennan ("Durney firm"). At this time, causes of action were pending against Gamboni and the manufacturers of the car and the tires involved in the accident. After transferring the case file, the Osborne firm notified the Durney firm pursuant to NRS 18.015 that it claimed an attorney's lien on any recovery received by Van Cleave.

The Durney firm obtained settlements for Van Cleave of $500,000 from Gamboni (one of Gamboni's few remaining assets was a $500,000 liability insurance policy) and $10,000 from the automobile manufacturer.[2] The Durney firm forwarded the settlement check to the Osborne firm, which endorsed and returned it to the Durney firm with the condition that the Durney firm set aside all attorney's fees (one-third of the settlement) and the Osborne firm's costs ($12,288) pending an appropriate allocation of attorney's fees. The Durney firm disputed the Osborne firm's entitlement to any attorney's fees, but nevertheless agreed to "set aside sufficient monies to satisfy [the] lien if it is ultimately proven to be valid."

---

[1]At the time, the law firm was known as Echeverria & Osborne.

[2]These two settlements will be collectively referred to as the "Gamboni settlement."

On June 12, 1986, the Osborne firm filed a Motion to Adjudicate and Enforce Attorney's Lien. The district court ordered the parties to schedule an evidentiary hearing on the motion. Van Cleave thereafter initiated a legal malpractice lawsuit against the Osborne firm for the way it handled her personal injury case.[3] Van Cleave accepted an offer of judgment in connection with the malpractice action, and a consent judgment was entered against the Osborne firm on November 30, 1989 in the amount of $127,098.47.[4] Van Cleave signed a release which stated that the payment was not to be construed as an admission of guilt.

After the resolution of the malpractice action, the Osborne firm began actively pursuing its attorney's lien. On March 1, 1990, Van Cleave moved for summary judgment in the lien proceeding on the basis that the Osborne firm's attorney's lien was not enforceable. After a four-day hearing, the district court determined that the Osborne firm was entitled to thirty-five percent of the one-third contingency fee retained by the Durney firm. Judgment was entered awarding the Osborne firm $55,560.45 in attorney's fees, plus $12,288.00 in costs. The district court also ordered interest to be paid on those sums at the rate of twelve percent from June 20, 1986 to the date of the judgment. Van Cleave appealed from this judgment. She asserts that the Osborne firm's attorney's lien was unenforceable after the consent judgment was entered in the malpractice case. We agree.

Pursuant to the parties' agreement, the order settling the malpractice case stated, in part, that "[t]his Judgment shall constitute an adjudication of all claims of the parties in any way arising out of or relating to the subject matter of this case." Although the Osborne firm contends that the malpractice claim and the attorney's lien proceeding are wholly different matters, we conclude that both actions are founded upon the same events, and therefore the Osborne firm's attorney's lien claim was extinguished upon the entry of the above judgment. The services provided by the Osborne firm are the basis for both the malpractice action and the attorney's lien, and we cannot logically conclude that the subject matter of the two actions are separate. The interrelatedness of the services performed and the payment expected by an attorney is demonstrated in the principle that "the court in the action in which the attorney's services were rendered has incidental jurisdiction to resolve disputes between a litigant and his attorney

---

[3]Although the timing is not conclusively established in the record, we accept the district court's determination that the attorney's lien motion was filed before the malpractice action.

[4]This offer of judgment was apparently made by the Osborne firm's insurance carrier, contrary to the wishes of the Osborne firm.

relative to the establishment of an attorney's lien." *Gordon v. Stewart*, 74 Nev. 115, 118, 324 P.2d 234, 236 (1958).

Significantly, the Osborne firm's counsel was given the opportunity to examine and amend the language of the consent judgment. The Osborne firm's counsel did, in fact, insert language into the proposed judgment, but neglected to except the attorney's lien proceeding from the plain language settling all claims between the parties. The failure to do so, we conclude, served to terminate the attorney's lien action upon entry of the judgment. "A consent judgment should be strictly construed to preserve the bargained for position of the parties." *Beaver v. Kingman*, 785 P.2d 998, 1001 (Kan. 1990) (citing *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983). *See also* *Hohensee v. Chemodurow*, 470 P.2d 965 (Mont. 1970) (agreement which purported to settle all claims between disputing parties constituted complete settlement of specified as well as unspecified claims).

We are also concerned about the Osborne firm's failure to pursue its claim from July, 1986 to November, 1989. This protracted lack of diligence, coupled with the absence of any exclusion of the lien action in the judgment, convinces us that the attorney's lien became unenforceable upon entry of judgment in the malpractice action.

The conclusion we have reached is not only appropriate in light of the consent judgment entered in the district court, but also represents sound policy under the circumstances of this case. In our view, it would be inconsistent to allow the Osborne firm to collect attorney's fees for the same services that formed the foundation for a substantial malpractice judgment against the firm. Even though the consent judgment contained no admission of liability, it is obvious that Van Cleave's recovery was, at a minimum, delayed several years because of the Osborne firm's failure to perform sufficient investigative work before drafting a release of the driver in exchange for a small settlement. Although the Osborne firm did lay a groundwork for Van Cleave's recovery, the Durney firm was able to accomplish in six months what the Osborne firm had been unable to do in six years. We accordingly perceive nothing inequitable in allowing the Durney firm to retain the entire attorney's fee.

---

Our decision respecting the extinguishment of the Osborne firm's attorney's fee lien and its right to an award of attorney's fees does not affect the firm's award of costs, however. The contingency fee agreement executed by Van Cleave acknowledged her responsibility for the costs incurred in pursuing her claim. The Osborne firm has continually asserted its right to $12,288 in costs. We conclude that the firm is entitled to its costs,

plus interest from June 20, 1986, as ordered by the district court. However, it is unclear from the record what portion of the claimed costs includes expenses related to the two prior appeals seeking to limit the applicability of the release of the driver. We must therefore remand to the district court the task of redetermining costs exclusive of any sums spent on the two prior appeals.

Because of our disposition of this matter, it is unnecessary to address Van Cleave's other assignments of error.

For the reasons stated above, we reverse that part of the judgment awarding attorney's fees to the Osborne firm, and remand for a redetermination of costs to be awarded to the Osborne firm consistent with the dictates of this opinion.