850 A.2d 530

NEW JERSEYANS FOR A DEATH PENALTY MORATORIUM, RE-
SPONDENT/CROSS–APPELLANT, v. NEW JERSEY DEPART-
MENT OF CORRECTIONS AND DEVON BROWN, APPEL-
LANT/CROSS–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 11, 2004—Decided June 16, 2004.

12

Before Judges PRESSLER, ALLEY and BILDER.

*David M. Ragonese,* Deputy Attorney General, argued the cause for appellant/cross-respondent (*Peter C. Harvey,* Attorney General, attorney; *Patrick DeAlmeida,* Deputy Attorney General, of counsel; *Mr. Ragonese,* on the brief).

*Kevin D. Walsh* argued the cause for respondent/cross-appellant (*Mr. Walsh* on the brief).

The opinion of the court was delivered by

BILDER, J.A.D. (retired and temporarily assigned on recall).

This appeal arises from public interest litigation with respect to the adoption by the Department of Corrections of regulations prescribing procedures for carrying out a sentence of death by lethal injection. In connection with that litigation, plaintiff New Jerseyans for a Death Penalty Moratorium, after failing to obtain access to documents from defendant Department of Corrections, instituted suit under the Open Public Records Act, *N.J.S.A.* 47:1A–1 to 13, an act which *inter alia* provides for an award of reasonable counsel fees to a prevailing requester. *N.J.S.A.* 47:1A–6. Claiming to be a prevailing party, plaintiff applied for an enhanced attorney-fee of $18,239.25. *See Rendine v. Pantzer,* 141 *N.J.* 292, 316, 661 *A.*2d 1202 (1995). The court awarded $8,146.57.

In the decision below, the trial judge recognized that plaintiff's attorney had represented it on a *pro bono* basis with no expectation of payment by his client. The trial judge then determined plaintiff was a prevailing party; the reasonable hours spent by plaintiff's attorney on the OPRA privilege issues was 51.1 hours; the reasonable hourly rate for his services was $155; although plaintiff was a prevailing party, it obtained only a partial success of 70%, thus subjecting the fee application to a 30% reduction; and the attorney was entitled to a 5% fee enhancement. These findings resulted in an award of $6,596.57. The trial judge also considered a supplemental application for fees in connection with the fee application, as to which she determined the reasonable hours spent on the supplemental brief to be 10 hours, which resulted in an additional award of $1550. A final judgment was entered requiring defendant to pay plaintiff's attorney $8,351.57 for costs and fees associated with the OPRA litigation.

Defendant Department of Corrections appeals from so much of the final judgment as recognized fee enhancement in calculating the fee award. Plaintiff cross-appeals from so much of the final judgment as reduced the reasonable hours spent by its attorney on the fee application from 70 to 10 hours [1]; subjected the litigation fee to a 30% reduction for lack of complete success; and treated its attorney, as a public interest attorney, differently from for-profit attorneys.

### The Appeal.

The issue raised by defendant on this appeal relates solely to the question of whether the fee enhancement principles adopted by the Supreme Court in *Rendine* apply to a case in which a *pro bono* attorney, acting without benefit of a written contingent fee agreement and without expectation of fee from his client, success-

---

[1] Plaintiff's Notice of Appeal also included the reduction of the reasonable hours spent by its attorney on the OPRA privilege issues from 89.5 to 56.1 hours. In its brief plaintiff states that it does not challenge this ruling.

fully litigates a public interest matter under a statute containing a fee-shifting provision.

We start by noting, as did the Supreme Court in *Szczepanski v. Newcomb Med. Center*, "that the reasonable counsel fee payable to the prevailing party under fee-shifting statutes is determined independently of the provision of the fee agreement between that party and his or her counsel." 141 *N.J.* 346, 358, 661 *A.*2d 1232 (1995). The goal is the award of a "reasonable fee." In this determination we are told in *Rendine* that the trial court should carefully establish the amount of the lodestar fee [2] and then "consider whether to increase that fee to reflect the risk of nonpayment in all cases in which the attorney's compensation entirely or substantially is contingent on a successful outcome." *Rendine, supra,* 141 *N.J.* at 337, 661 *A.*2d 1202. The issue is whether enhancement applies where the plaintiff's attorney is acting *pro bono publico* without benefit of any written retainer agreement. We are satisfied it should because the possibility of compensation, i.e. contingent compensation, inheres in the existence of the fee-shifting provision.

More importantly, the proper implementation of the fee-shifting provision of OPRA is necessary to the Legislature's determination that, subject to exceptions for the protection of the public interest, government records should be readily accessible to the public. *N.J.S.A.* 47:1A–1. Successful litigation of a case brought under this act vindicates this important interest. The Legislature in its wisdom has recognized the practical fact that the right to obtain unprivileged public documents will often be empty without the promise of recompense contingent on success in court. For the ordinary person, it is the fee-shifting provision that opens the courthouse door.

The State contends as a matter of public policy it is inappropriate to apply enhancement when the attorney's fee is to be paid by

---

[2] The number of hours reasonably expended multiplied by a reasonable hourly rate.

a public entity—that such a burden should not be visited upon the taxpayers. The argument misapprehends two important elements. First, the Legislature has determined as a matter of public policy that reasonable attorney fees shall be paid to those who are required to litigate their right to obtain access to unprivileged public documents. A public entity will always be the defendant in such suits. Secondly, enhancement is not a separate award but merely a mechanism whereby the legislated goal of a "reasonable fee" in the circumstances can be calculated.

We are satisfied that the trial judge acted properly in applying the principles of *Rendine* to enhance the lodestar fee. We are not as confident with respect to the amount of that enhancement.

As we have already noted, enhancement of the lodestar amount is merely a mechanism for awarding a "reasonable fee." It reflects the contingent nature of the legal services performed and may also reflect the likelihood of success. *Rendine, supra,* 141 *N.J.* at 340, 661 *A.*2d 1202. Stated more succinctly, it takes into account the contingent nature of the undertaking and legal difficulties to be faced. Here, absent success, the risk of nonpayment was total and the "legal" risks unknowable. Access to the public records having been restricted, plaintiff was forced to play a sort of blind-man's buff in the pursuit of its rights. And success could not be measured in monetary terms but only in the vindication of the right of access to improperly withheld unprivileged records.

In *Rendine* the court suggested that the appropriate range of enhancements ordinarily should range between five and fifty percent of the lodestar fee, and more typically should range between twenty and thirty-five percent. *Id.* at 343, 661 *A.*2d 1202. In reliance on the persuasive effect of *H.I.P. v. K. Hovnanian at Mahwah,* 291 *N.J.Super.* 144, 676 *A.*2d 1166 (Law Div.1996), and motivated by her perception that plaintiff's attorney's long history of unpaid service as Chair of plaintiff's Legal Committee and his willingness to undertake this litigation on a strictly *pro bono* basis evidenced that he required little financial motivation to undertake the representation, the trial judge awarded a minimal fee enhance-

ment of five percent. We reject the notion that an attorney's willingness to provide uncompensated services to a public interest organization depreciates the value of his services and has a negative effect on a determination of the reasonable value of those services. We also find that the trial judge's reliance on *H.I.P.* is misplaced. In *H.I.P.* plaintiff was apparently represented by a salaried member of its staff. *H.I.P., supra,* 291 *N.J.Super.* at 159, 676 *A.*2d 1166.

> Both as a matter of economic reality and simple fairness, we have concluded that a counsel fee awarded under a fee-shifting statute cannot be "reasonable" unless the lodestar, calculated as if the attorney's compensation were guaranteed irrespective of result, is adjusted to reflect the actual risk that the attorney will not receive payment if the suit does not succeed.
>
> [*Rendine, supra,* 141 *N.J.* at 338, 661 *A.*2d 1202]

We exercise our original jurisdiction to increase the enhancement to twenty-five percent.

### The Cross–Appeal.

#### A. The Fee Reduction for Partial Success.

When a plaintiff achieves only partial or limited success, the lodestar may be excessive because it reflects time spent on matters as to which plaintiff did not prevail. *Rendine, supra,* 141 *N.J.* at 336, 661 *A.*2d 1202; *Silva v. Autos of Amboy, Inc.,* 267 *N.J.Super.* 546, 556–557, 632 *A.*2d 291 (App.Div.1993). A reasonable fee should reflect the total expenditure of time in relation to the actual relief obtained. *Kellam Associates v. Angel Projects,* 357 *N.J.Super.* 132, 142, 814 *A.*2d 642 (App.Div.2003). The critical factor is the degree of success obtained. *Silva, supra,* 267 *N.J.Super.* at 556, 632 *A.*2d 291.

In a public interest case where plaintiff seeks to vindicate a public right—to enforce a public policy—it is very difficult to parse the result so as to quantify the degree of success. Success must be gauged in a qualitative rather than a quantitative sense. This is particularly true in a case such as this where the party seeking disclosure is forced to spread a wider net than might be required had there not been an unsupportable claim of privilege.

■ Although the trial judge made a correct legal analysis of the prevailing party issue and indicated the need to view the results in a qualitative rather than a quantitative sense, she appears to have relied on a quantitative analysis provided by plaintiff.[3] Despite her conclusion that "plaintiff achieved an 'excellent result'", the trial judge made the award subject to a 30% reduction to reflect only partial success.

As the trial judge noted, in *Silva* we recognized that where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. *Silva, supra,* 267 *N.J.Super.* at 556, 632 *A.*2d 291, citing *Hensley v. Eckerhart,* 461 *U.S.* 424, 435, 103 *S.Ct.* 1933, 1940, 76 *L.Ed.*2d 40, 52 (1983). As plaintiff noted in its brief, this is particularly true when the litigation has advanced the statutory goals of OPRA and served the interests of the public.

From our own review of the record, as well as our earlier opinion *In re Readoption of N.J.A.C. 10A:23,* 367 *N.J.Super.* 61, 842 *A.*2d 207 (App.Div.2004)(plaintiff's underlying public interest litigation), we are satisfied plaintiff is entitled to be found to have achieved a full measure of success and to be fully compensated for its efforts. An important public purpose is served by plaintiff's success in enforcing the legislature's determination that government should operate in a transparent fashion. Every breach of the wall of bureaucratic secrecy produces significant benefits to the public at large.

We exercise our original jurisdiction to eliminate any fee reduction for partial success from the final award.

### B. Reasonable Hours.

■ In support of his original application for fees with respect to this litigation, plaintiff's counsel submitted a certification showing the expenditure of a total of 89.5 work hours. In awarding

---

[3] According to the opinion below, plaintiff asserted that applying a document-by-document approach, it prevailed in receiving relief with regard to 60 out of 75 documents, or 80%, and applying a page-by-page approach it achieved access to 59% of the documents it sought.

counsel fees the trial judge reduced that total to 56.1 hours. In her decision the trial judge set forth the basis for that action. Plaintiff does not appeal from that determination.[4] It does appeal, however, from a subsequent reduction of the work hours expended in connection with the motion for the attorney-fee award from the 70.3 hours set forth in the supplementary certification to 10 hours.

Extensive oral argument was had with respect to the original application for fees. The trial judge started by advising counsel of some tentative thoughts and her probable intention to write an opinion. In aid of that she requested further briefs.

[T]here's a lot of legal issues. Your briefs weren't real long, but there's some very, very interesting issues. I think the fee enhancement is perhaps the most interesting one. But anyway, those are my tentative thoughts. My tentative sense is that there probably should be a fee enhancement of between five and 10 percent. But I could be persuaded otherwise. Not up, but perhaps down.

I also have a tentative decision that I've drafted. I probably, after our discussion today, will probably go back and work on it. I may make some changes. I am taking a vacation. Tomorrow is my last day so I'm probably going to want to get this out. However, if I think having some supplemental briefs on some certain points might be helpful I might do that.

At the conclusion of the argument she said:

Let me tell you what I want you to do on this case. And I want you to categorize it. I want you to deal with—well, the prevailing party part of it, I think, is—I don't think we need anything more than that. But with regard to the reduction for a partial success, that is—some discussion of qualitative versus quantitative analysis, with regard to the number of hours, if you want to add anything also on that, that's fine.

With regard to the rate, I don't really think I need anything more on the rate. But on the enhancement, I think that there's a number of issues that we talked about, and that is, is there a different status because it's a governmental agency? Is it a different status because it's a public interest firm? Is it different because this is not a LAD case? The issues about—and I'd like you to put these—don't mush them altogether. Put impact of attorney fee award, status of prevailing party as it relates to the award of fees, status of the losing party as a governmental entity. Whether there is—it's appropriate to differentiate a prevailing party in an OPRA case under the fee enhancement because it involves a greater risk. And what I would suggest that each of you, after this, frame those issues together so that your briefs include the same issue. And then whether there's—because all of these other cases deal with LAD when there's a fundamental difference in how this

---

[4] See note 1, *infra.*

case should be handled because it's an OPRA case. Those are, I think, four issues. But get together and frame them. I want exactly the same issue to appear in all of them.

I want you to respond. I want you to highlight what you indicated with regard to the number of hours and the fact that I discounted the number of hours. Your argument that because this is a new law that in the market of the legal community that it would have taken any lawyer that period of time. And I also want you to talk about the truncated response time. And I want you to put that as a heading and then talk about that. And I want you to give that to [the Deputy Attorney General] so that he can take a different position. His position is going to be that— I assume opposite. Okay?

I'm just trying to think of the other issues with regard to the—I want you to talk a little bit about a qualitative analysis. Quantitative versus qualitative analysis. And how the Court—what factors should be considered by the Court in applying a qualitative versus quantitative analysis. And you can develop your own factors and then integrate them. I want that as a category.

[PLAINTIFF'S ATTORNEY]: Our own factors within the qualitative analysis?

THE COURT: Within the qualitative analysis. You would mention them and support the theory that there should be no reduction and [the Deputy Attorney General] would indicate that based upon whatever factors he develops that there should, in fact, be a significant reduction.

Okay. Lets talk now about—let's talk—and any other things that you want to bring up. I really do like when you give me a specific topic and then analyze it. I'd like you to integrate—I know lawyers like to draw conclusions, but it's very helpful if you can find the cases and analogize the facts in those cases as it applies to this. It's helpful. I'm going to submit this for publication and I'd like it to be as thorough as possible.

A review of plaintiff's attorney's certification discloses a prompt and diligent effort over the following two months to comply with the trial judge's request, to fulfill his obligation as an officer of the court. Discounting the 7.6 hours spent preparing for and arguing the December 12, 2002 motion, plaintiff's counsel dedicated 62.7 hours to the research and briefing of the court-identified issues.

As noted, the trial judge substantially reduced the supplemental certification total, allowing as reasonable only 10 hours. Unlike the careful analysis made in reducing the time claimed in the initial certification, the trial judge, after describing plaintiff's supplemental brief as "comprehensive", merely said: "While the court does not dispute the number of hours listed by [Plaintiff's counsel] in the second certification, the court finds that the number of hours is excessive, redundant and unnecessary. Ac-

cordingly, the court reduces the total number of time spent to research the issue of fees to ten hours."

From our own review of the record, we are satisfied plaintiff is entitled to be fully compensated for its attorney's efforts and, with respect to its fee application, should be allowed as reasonable fifty hours of time expended in fulfilling the court's request with a comprehensive brief.

We exercise our original jurisdiction to find the reasonable hours spent on the supplemental brief to be fifty hours.

### C.   The hourly rate.

Plaintiff sought no more than $155 per hour and is bound by that.   We note that was a modest request.

The order of March 17, 2003 is vacated.   The matter is remanded for a recalculation of the attorney's fee in accordance with this opinion and the entry of an appropriate order.