134 Nev., Advance Opinion 67

# IN THE COURT OF APPEALS OF THE STATE OF NEVADA

YVONNE O'CONNELL, AN
INDIVIDUAL,
Appellant,
vs.
WYNN LAS VEGAS, LLC, D/B/A WYNN
LAS VEGAS,
Respondent.

No. 71789

**FILED**

AUG 30 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a post-judgment order denying appellant's motion for attorney fees and costs. Eighth Judicial District Court, Clark County; Carolyn Ellsworth, Judge.

*Reversed and remanded.*

Nettles Law Firm and Brian D. Nettles, Christian M. Morris, Jon J. Carlston, and Edward J. Wynder, Henderson,
for Appellant.

Semenza Kircher Rickard and Lawrence J. Semenza, III, Christopher D. Kircher, and Jarrod L. Rickard, Las Vegas,
for Respondent.

_____

BEFORE SILVER, C.J., TAO and GIBBONS, JJ.

18-901954

## OPINION

By the Court, GIBBONS, J.:

Yvonne O'Connell sued Wynn Las Vegas, LLC, for negligence after she was injured when she slipped and fell on the resort's property.[1] Before the jury trial on O'Connell's claims, O'Connell made a $49,999 offer of judgment to Wynn, which it rejected. A jury awarded O'Connell $400,000 for past and future pain and suffering, with the final judgment of $240,000 reflecting that the jury deemed Wynn 60 percent at fault and O'Connell 40 percent at fault.

O'Connell subsequently sought an attorney fees award under NRCP 68, which allows a party to seek attorney fees when the final judgment is more favorable than her rejected offer of judgment. She requested $96,000 in attorney fees, which she calculated as 40 percent of the reduced judgment amount based on the 40-percent contingency fee agreement with her attorneys. The district court denied her request. The court did not award O'Connell any attorney fees because, in part, O'Connell did not submit hourly billing records of the work performed by her counsel to show the requested fee was reasonable. The court further found that the other factors set forth in *Beattie v. Thomas*, 99 Nev. 579, 588-89, 668 P.2d 268, 274 (1983), likewise supported denying attorney fees. O'Connell appealed, arguing that she should not be required to submit hourly billing records to support an attorney fees award when her attorneys represented her on a contingency fee basis and that the court otherwise abused its discretion in weighing the *Beattie* factors to deny her fees request.

---

[1]This appeal was consolidated with the appeal in Docket No. 70583 prior to briefing. We now deconsolidate these appeals for the purposes of disposition. Judgment was affirmed in Docket No. 70583.



This case asks us to examine if a lawyer, who represents a client on a contingency fee basis, must provide proof of hourly billing records before he or she can be awarded attorney fees that are otherwise allowed by agreement, rule, or statute. We conclude that district courts cannot deny attorney fees because an attorney, who represents a client on a contingency fee basis, does not submit hourly billing records. The district court here relied primarily on the lack of hourly billing records in evaluating the reasonableness of O'Connell's application for attorney fees, without recognizing that attorney fees can be awarded when they are based upon contingency fee agreements. And because we further determine that the district court improperly analyzed certain of the remaining *Beattie* factors, we conclude the court abused its discretion in denying her request. Consequently, we reverse the district court's denial of O'Connell's request for attorney fees and remand for a full hearing on O'Connell's request.[2]

*FACTS AND PROCEDURAL HISTORY*

On February 8, 2010, O'Connell slipped and fell on a liquid substance as she was walking through the front atrium of the Wynn resort. Two days later, she went to an urgent care facility seeking treatment for her pain from the fall. She continued to see a series of doctors for pain and injuries related to the incident. Two years after her fall, O'Connell sued Wynn for negligence. Discovery progressed over the following three years,

---

[2]The district court partially awarded O'Connell her requested expert witness fees. O'Connell argues on appeal that the district court should have awarded her the entirety of those fees. O'Connell did not raise this argument until her reply brief in her appeal. Therefore, we decline to consider it now. *See Weaver v. State, Dep't of Motor Vehicles*, 121 Nev. 494, 502, 117 P.3d 193, 198-99 (2005) ("As this argument was raised only in [appellant's] reply brief, we need not consider it."). All other points raised on appeal not discussed herein are unpersuasive.

and the case was tried before a jury, over a seven-day period, in November 2015.

Before the jury trial, Wynn and O'Connell attempted to settle the case by exchanging offers of judgment. Wynn's top offer was for $3,000. O'Connell's last offer was for $49,999, which included interest, costs, and attorney fees. Four months before O'Connell's last offer, and before the discovery deadline, she disclosed approximately $33,000 in medical damages. She later disclosed an amended amount of nearly $38,000 in damages approximately a month after the discovery deadline, but still before she presented her offer of judgment. The case proceeded to a jury trial, and the jury awarded O'Connell $400,000 for pain and suffering, apportioned as $150,000 for past pain and suffering and $250,000 for future pain and suffering. The jury assigned 60 percent of the fault to Wynn and 40 percent to O'Connell, and the judgment amount of $240,000 reflected the verdict minus 40 percent.

Post-trial, in her initial application for attorney fees, costs, and pre-judgment interest, O'Connell argued that her requested attorney fees were reasonable and justified because the State Bar of Nevada approves of contingency fee arrangements and "the industry standard" is 40 percent, or more, if the case goes to a jury trial. Within her application, O'Connell noted generally "the work done in this case" and argued that her "counsel expended substantial time and incurred costs to try this matter through a full jury trial." O'Connell further argued that, if the court did not award fees, it would undermine the purpose of NRCP 68 and its goal to settle cases. O'Connell contended that to decide "the amount of fees to award, the court may calculate a reasonable amount to be that of the contingency fee," citing to *Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 124 P.3d 530

(2005). She claimed, without elaborating, that under *Brunzell v. Golden Gate National Bank*, 85 Nev. 345, 455 P.2d 31 (1969), which sets out factors to help courts assess a reasonable amount of attorney fees, it was evident that her request for $96,000 in attorney fees was "reasonable." To support this request, O'Connell attached her contingency fee agreement, which stated, in part, that the fee would be 40 percent of any recovery and 50 percent of any recovery if there was an appeal.

In her later-filed amended application for fees, costs, and pre-judgment interest, O'Connell addressed the *Brunzell* factors and argued that her counsel satisfied all four factors. As to the second factor, the type of work done, O'Connell noted that contingency fees are common in personal injury cases because clients usually have fewer resources to pay legal fees up front or as the fees accrue. She argued that personal injury cases are difficult because the burden of proof rests on the plaintiff and the "[c]ases require considerable skill and effort in written discovery and trial work." Additionally, she explained the risk attorneys take by accepting cases on a contingency fee basis because "attorneys will not be entitled to fees if they lose." Regarding the third factor about the "work actually performed," O'Connell summarily argued that her counsel "spent hundreds of hours preparing and litigating this case."

The district court conducted a brief hearing on the motion for attorney fees, and no additional evidence was presented. The court allowed only limited argument by O'Connell and then denied the request for attorney fees. In its order, the district court rejected O'Connell's request for attorney fees in its entirety. It applied the *Beattie* factors, 99 Nev. at 588-89, 668 P.2d at 274, as required when evaluating an NRCP 68 offer to decide whether the prevailing party is entitled to attorney fees. The district court

5

concluded that the first three *Beattie* factors favored Wynn, signaling that O'Connell was not entitled to attorney fees despite prevailing. For the fourth *Beattie* factor regarding the reasonableness of the fees, the court applied the factors from *Brunzell* to decide what, if any, amount of attorney fees it could award. It acknowledged that O'Connell provided the qualities of her counsel and that it was apparent she received a favorable result. The court did not distinctly address the remaining two *Brunzell* factors. Instead it only addressed the tasks performed and hours associated with them. It decided that it could not determine if the fees were reasonable without any bills describing the tasks completed and the hours expended, and found in favor of Wynn on the fourth *Beattie* factor.

In her appeal from the district court's decision regarding attorney fees, O'Connell does not argue that she provided any billing statements to the court in addressing the determination that the reasonableness of the award could not be determined absent any bills. Rather, she argues that the district court is holding contingency fee agreements to "a double standard" by requiring hourly billing records. We agree that declining to assess the reasonableness of a request for attorney fees, based upon a contingency fee agreement, because the motion was not supported by hourly billing statements, is improper when analyzing whether to award fees under *Beattie* and how much to award under *Brunzell*.

## ANALYSIS

A party may seek attorney fees when allowed by an agreement, rule, or statute. *See* NRS 18.010 (governing awards of attorney fees); *RTTC Commc'ns, LLC v. The Saratoga Flier, Inc.*, 121 Nev. 34, 40, 110 P.3d 24, 28 (2005) (noting that "a court may not award attorney fees absent authority under a specific rule or statute"). NRCP 68 establishes the rules regarding

offers of judgment. A party may serve an offer of judgment "[a]t any time more than 10 days before trial." NRCP 68(a). If a party "rejects an offer and fails to obtain a more favorable judgment," that party is responsible for "the offeror's post-offer costs, applicable interest on the judgment from the time of the offer to the time of entry of the judgment and reasonable attorney's fees, if any be allowed, actually incurred by the offeror from the time of the offer." NRCP 68(f)(2); *see also RTTC*, 121 Nev. at 40-41, 110 P.3d at 28.

The district court must evaluate the *Beattie* factors when deciding whether to award attorney fees pursuant to NRCP 68. *Frazier v. Drake*, 131 Nev. 632, 641-42, 357 P.3d 365, 372 (Ct. App. 2015). Ultimately, the decision to award attorney fees rests within the district court's discretion, and we review such decisions for an abuse of discretion. *Id.* at 642, 357 P.3d at 372. The district court abuses its discretion when "the court's evaluation of the *Beattie* factors is arbitrary or capricious." *Id.*

The *Beattie* factors require the district court to evaluate:

> (1) whether the plaintiff's claim was brought in good faith; (2) whether the defendants' offer of judgment was reasonable and in good faith in both its timing and amount; (3) whether the plaintiff's decision to reject the offer and proceed to trial was grossly unreasonable or in bad faith; and (4) whether the fees sought by the offeror are reasonable and justified in amount.

*Beattie*, 99 Nev. at 588-89, 668 P.2d at 274. *Beattie* applies to plaintiffs and defendants. *See Yamaha Motor Co., U.S.A. v. Arnoult*, 114 Nev. 233, 252, 955 P.2d 661, 673 (1998) (deciding that when the defendant is the offeree, the court should consider if the defendant's defense was brought in good

faith under the first factor and remanding for the district court to reconsider liability issues when evaluating whether the defendant's rejection of the offer was unreasonable or in bad faith under the third factor). When it is determined that the first three *Beattie* factors weigh in favor of the party who rejected the offer of judgment, the reasonableness of the requested fees becomes irrelevant as the reasonableness of the fees alone cannot support an attorney fees award. *Frazier*, 131 Nev. at 644, 357 P.3d at 373.

When considering the amount of attorney fees to award, the analysis turns on the factors set forth in *Brunzell*. Of particular significance to this case, *Brunzell* provides that "[w]hile hourly time schedules are helpful in establishing the value of counsel services, other factors may be equally significant." 85 Nev. at 349, 455 P.2d at 33. *Brunzell* directs lower courts to consider the following when determining a reasonable amount of attorney fees to award:

> (1) *the qualities of the advocate:* his ability, his training, education, experience, professional standing and skill; (2) *the character of the work to be done:* its difficulty, its intricacy, its importance, time and skill required, the responsibility imposed and the prominence and character of the parties where they affect the importance of the litigation; (3) *the work actually performed by the lawyer:* the skill, time and attention given to the work; (4) *the result:* whether the attorney was successful and what benefits were derived.

*Id.* (internal quotation marks omitted). With these standards in mind, we turn to the matter before us.

*The offer of judgment was reasonable and in good faith*[3]

The district court concluded that the second *Beattie* factor weighed in Wynn's favor because the court precluded O'Connell from submitting "special medical damages at the time of trial," which made it difficult for Wynn to determine the value of the case. The court also concluded that the offer was unreasonable because O'Connell made it when she did not have a proper damages calculation. O'Connell argues that she had disclosed approximately $38,000 in medical damages at the time of her offer. Wynn contends that O'Connell's damages should have been excluded because of discovery issues, while O'Connell points to the significant amount of discovery her attorneys completed before making the $49,999 offer.

The second *Beattie* factor requires district courts to evaluate "whether the . . . offer of judgment was reasonable and in good faith in both its timing and amount." *Beattie*, 99 Nev. at 588, 668 P.2d at 274. "[T]here is no bright-line rule that qualifies an offer of judgment as per se reasonable in amount; instead, the district court is vested with discretion to consider the adequacy of the offer and the propriety of granting attorney fees."

---

[3]We address only *Beattie* factors two and four in this opinion. On appeal, O'Connell does not challenge the district court's ruling on the first *Beattie* factor, and so we need not consider it. *See Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 161 n.3, 252 P.3d 668, 672 n.3 (2011) ("Issues not raised in an appellant's opening brief are deemed waived."). Additionally, Wynn did not respond to O'Connell's argument regarding the third *Beattie* factor. Therefore, Wynn conceded this point, and thus, the district court will need to reweigh this factor upon remand. *See Bates v. Chronister*, 100 Nev. 675, 682, 691 P.2d 865, 870 (1984) (treating respondent's failure to address one of appellant's arguments "as a confession of error").

 

*Certified Fire Prot., Inc. v. Precision Constr., Inc.*, 128 Nev. 371, 383, 283 P.3d 250, 258 (2012).

Here, the district court justified its decision to weigh the second factor in Wynn's favor based on its conclusion that it had excluded evidence of O'Connell's medical damages. This reasoning has two significant flaws. First, as to timing, apart from its decision in its order denying O'Connell's request for attorney fees, it is not apparent from the record that the district court did in fact exclude O'Connell's medical damages. After it heard Wynn's motion in limine seeking to exclude the medical damages before trial, the court denied Wynn's motion without prejudice and deferred its decision until trial, which was almost two months after O'Connell's offer of judgment expired. Furthermore, on the first day of trial, O'Connell chose not to seek medical damages, so it is unclear if an order was ever needed, or entered, as one does not appear in the record. If the district court ever did exclude the evidence, any exclusion occurred after O'Connell's offer of judgment had expired. Therefore, Wynn did not know at the time it rejected the offer of judgment that it would not face potential liability for medical damages.

Second, as to the amount, whether O'Connell's medical damages were excluded did not control her request for general damages, which would include pain and suffering. Wynn had all of the necessary information to evaluate O'Connell's claim as discovery had closed before she made her offer. *See Certified*, 128 Nev. at 383, 283 P.3d at 258. Indeed, Wynn risked the possibility of a large, six-figure verdict by rejecting O'Connell's offer, regardless of the admissibility of her medical damages—and that is exactly what happened. During closing arguments, O'Connell asked the jury for a damages award in the six figures. She ultimately was

awarded $400,000, and still received a $240,000 judgment after fault was apportioned—well above her $49,999 offer of judgment that Wynn rejected. *See generally RTTC*, 121 Nev. at 37, 43, 110 P.3d at 26, 29 (concluding that there was "ample support in the record to support the district court's findings that both [respondent's] claim and offer of judgment were brought in good faith" in a case in which respondent made a $45,000 offer of judgment that was rejected, yet the respondent was ultimately awarded "$53,333, plus interest").

Based on the foregoing, the district court abused its discretion by mistakenly concluding that, because medical damages were precluded, O'Connell did not have a basis for her offer or that Wynn could not properly evaluate her offer.[4] *See Dillard Dep't Stores, Inc. v. Beckwith*, 115 Nev. 372, 382, 989 P.2d 882, 888 (1999) (highlighting that "[t]he purpose of . . . NRCP 68 is to save time and money" and to "reward a party who makes a reasonable offer and punish the party who refuses to accept such an offer"). Thus, the determination regarding the reasonableness of the offer as to timing and amount was an abuse of discretion and must be reweighed on remand in consideration of all of the factors when deciding whether fees are warranted.

---

[4]Wynn argued below that O'Connell's various offers resulted in "gamesmanship" and was one reason why Wynn could not give due weight to her $49,999 offer of judgment. But this argument is unpersuasive as the record suggests that Wynn did not give due weight to any of O'Connell's offers. O'Connell's $49,999 offer was close to her two most recently disclosed medical damages at the time ($33,000 in medical damages followed by a later disclosed $38,000 in medical damages). In comparison, Wynn only made a $3,000 offer of judgment when O'Connell disclosed an estimated $29,000 in medical expenses.

*The district court abused its discretion by limiting its review of the reasonableness of O'Connell's fees to whether hourly billing records were submitted*

We now turn to the fourth *Beattie* factor to determine "whether the fees sought by the offeror are reasonable and justified in amount." *Beattie*, 99 Nev. at 589, 668 P.2d at 274. As discussed above, courts apply the *Brunzell* factors within their analysis of the fourth *Beattie* factor to determine a reasonable amount of attorney fees. *Brunzell*, 85 Nev. at 349, 455 P.2d at 33. Here, the district court concluded that, because O'Connell did not provide bills detailing the tasks executed and hours expended to complete those tasks, it could not determine if the requested fee was reasonable based on the work performed.

We first address whether an attorney, who litigated a matter based on a contingency fee agreement, is required to produce hourly billing records to receive an attorney fees award. We conclude that such records are not required. We then provide guidance as to how trial courts can evaluate a fee request based on a contingency fee agreement that does not include hourly billing statements.

*Hourly billing records are not required to support an award of attorney fees based on a contingency fee agreement*

Nevada law does not require billing records with every attorney fees request. The law only requires the trial court to calculate "a reasonable fee." *Shuette*, 121 Nev. at 864, 124 P.3d at 548 (internal quotation marks omitted); NRCP 68(f)(2) (allowing an offeror reasonable attorney fees); *see also* NRCP 54(d)(2)(B) (requiring "a fair estimate of" the reasonable attorney fees). "[I]n determining the amount of fees to award, the court is not limited to one specific approach; its analysis may begin with any method rationally designed to calculate a reasonable amount, including those based on a 'lodestar' amount or a *contingency fee*." *Shuette*, 121 Nev. at 864, 124

COURT OF APPEALS
OF
NEVADA

(O) 1947B

P.3d at 549 (emphasis added) (citation omitted).[5] The district court must properly weigh the *Brunzell* factors in deciding what amount to award. *Id.* at 864-65, 124 P.3d at 549. "In this manner, whichever method the court ultimately uses, the result will prove reasonable as long as the court provides sufficient reasoning and findings in support of its ultimate determination." *Id.* at 865, 124 P.3d at 549.

In *Cooke v. Gove*, the Nevada Supreme Court upheld an attorney fees award based on "the reasonable value" of the attorney's services, even though the case was taken on a contingency fee basis with no formal agreement. 61 Nev. 55, 61, 114 P.2d 87, 89 (1941). The "evidence" to support the fee was the case file from the successful matter, some of the letters between the client and attorney, and two depositions from other attorneys about the value of the appellant's services. *Id.* at 57, 114 P.2d at 88. The court noted that the reasonable fee was based on the trial court's evaluation of "the reasonable value of plaintiff's services from all the facts and circumstances" after the court considered how the plaintiff's "work, thought and skill contributed" to the successful outcome. *Id.* at 61, 114 P.2d at 89 (internal quotation marks omitted).

Thus, the district court is not confined to authorizing an award of attorney fees exclusively from billing records or hourly statements. *See Shuette*, 121 Nev. at 864-65, 124 P.3d at 548-49; *Brunzell*, 85 Nev. at 349, 455 P.2d at 33. Rather, limiting the source for the calculation primarily to billing records is too restrictive. *See generally Shuette*, 121 Nev. at 864, 124

---

[5]The lodestar method "involves multiplying the number of hours *reasonably* spent on the case by a *reasonable* hourly rate." *Shuette*, 121 Nev. at 864 n.98, 124 P.3d at 549 n.98 (emphasis added) (internal quotation marks omitted).

P.3d at 549 (stating that there is no one approach to determining the amount of attorney fees). Accordingly, a trial court can award attorney fees to the prevailing party who was represented under a contingency fee agreement, even if there are no hourly billing records to support the request.

We note that our conclusion is in line with other jurisdictions that squarely address awarding attorney fees based on a contingency fee agreement. For example, in *McNeel v. Farm Bureau General Insurance Co.*, the Michigan Court of Appeals reversed a trial court's decision to reduce an award of fees to an attorney who represented a client on a contingency fee basis because the "court gave only mild consideration to the complexity of the case" and did not factor in the required attorney preparation. 795 N.W.2d 205, 221 (Mich. Ct. App. 2010). The *McNeel* court outlined what the trial court could do when reviewing a fee without billable hour statements: "The trial court can certainly consider the type of case, the length of the trial, the difficulty of the case, the numbers and types of witnesses, as well as other relevant factors . . . ." *Id.* at 220 (internal quotation marks omitted). Similarly, in California, billing records are not always required. *See Mardirossian & Assocs., Inc. v. Ersoff*, 62 Cal. Rptr. 3d 665, 676 (Ct. App. 2007) (concluding that the trial court did not abuse its discretion in an attorney fees award case, in part, because, despite a lack of billing records, the Mardirossian attorneys had personal knowledge of the legal work they performed and "each testified at length concerning the work he or she performed, the complexity of the issues and the extent of the work that was required").

Courts have recognized an additional reason that supports awarding attorney fees—the risks attorneys take by offering or accepting contingency fee agreements. *See King v. Fox*, 851 N.E.2d 1184, 1191-92

COURT OF APPEALS
OF
NEVADA

(O) 1947B

14

(N.Y. 2006) ("In entering into contingent fee agreements, attorneys risk their time and resources in endeavors that may ultimately be fruitless. Moreover, it is well settled that the client may terminate [the contingency fee agreement] at any time, leaving the lawyer no cause of action for breach of contract[,] only quantum meruit." (first alteration in original) (citation and internal quotation marks omitted)); *see also Schefke v. Reliable Collection Agency, Ltd.*, 32 P.3d 52, 96-97 (Haw. 2001) (concluding that fee awards can be justified based on the risks associated with accepting a case on a contingency fee basis). Courts should also account for the greater risk of nonpayment for attorneys who take contingency fee cases, in comparison to attorneys who bill and are paid on an hourly basis, as they normally obtain assurances they will receive payment. *See Rendine v. Pantzer*, 661 A.2d 1202, 1228 (N.J. 1995) (recognizing that rewarding a lawyer for taking a case for which compensation is contingent on the outcome is based in part on providing a monetary incentive for taking such cases because an hourly fee is more attractive unless such an extra incentive exists).

Additionally, contingency fees allow those who cannot afford an attorney who bills at an hourly rate to secure legal representation. *See King*, 851 N.E.2d at 1191 ("Contingent fee agreements between attorneys and their clients . . . generally allow a client without financial means to obtain legal access to the civil justice system."). Relatedly, attorney fees are permissible in pro bono cases, where there are likewise no billing statements. *See Miller v. Wilfong*, 121 Nev. 619, 622-23, 119 P.3d 727, 729-30 (2005) (discussing the public policy rationale in support of awarding attorney fees to pro bono counsel and concluding that such awards are proper); *Black v. Brooks*, 827 N.W.2d 256, 265 (Neb. 2013) (concluding that if organizations are not awarded for recovery of statutory fees, they may

decline to represent pro bono cases); *see, e.g., New Jerseyans for a Death Penalty Moratorium v. N.J. Dep't of Corr.*, 850 A.2d 530, 532 (N.J. Super. Ct. App. Div. 2004) (explaining that when determining a reasonable fee to award in a pro bono case, courts should consider whether to increase the "fee to reflect the risk of nonpayment in all cases in which the attorney's compensation entirely or substantially is contingent on a successful outcome") (internal quotation marks omitted), *aff'd as modified by* 883 A.2d 329 (N.J. 2005).

*Considerations when assessing an attorney fees award based on a contingency fee agreement*

Here, the district court determined that it could not award fees without hourly billing records despite citing no legal authority for that proposition. As discussed above, however, district courts may take almost any sensible approach or apply any logical method to calculate "a reasonable fee" to award as long as the court weighs the *Brunzell* factors. *See Shuette*, 121 Nev. at 864-65, 124 P.3d at 548-49 (internal quotation marks omitted).

As to the methods or approaches a district court may use to determine a reasonable amount, there are certainly more considerations than just hourly billing records. *See Hsu v. Cty. of Clark*, 123 Nev. 625, 637, 173 P.3d 724, 733 (2007) (remanding the issue of attorney fees to the district court to determine a starting point and adjust the fee accordingly based on several factors, including the "time taken away from other work," case-imposed deadlines, how long the attorney worked with the client, the usual fee and awards in similar cases, if the fee was contingent or hourly, the amount of money at stake, and how desirable the case was to the attorneys involved); *see also* RPC 1.5(a)(1)-(8) (listing factors to consider in deciding if a fee is reasonable). Additionally, district courts can look at the facts before them, such as what occurred at trial and the record a party produced in

litigating a matter. *See Herbst v. Humana Health Ins. of Nev., Inc.*, 105 Nev. 586, 591, 781 P.2d 762, 765 (1989) (reviewing an attorney's affidavit of the number of hours of work performed and concluding that this document, "combined with the fact that Herbst's attorney worked for two years on the case, established 12 volumes of records on appeal, and engaged in a five day trial should enable the court to make a reasonable determination of attorney's fees").

In comparison here, the district court could consider the length of time counsel represented O'Connell and the length of the trial. We note that the appellate record was large and most of it pertained to the trial. Also, based on the lower court record, there is evidence that O'Connell's attorneys worked on the case in the form of motions they filed and at pretrial hearings held after O'Connell's offer of judgment expired, as well as at trial, which lasted seven days. Further, O'Connell's application indicated that counsel had performed a considerable amount of work— "hundreds of hours" on the case—and she included the contingency fee agreement as part of her request for fees.[6] *See generally* RPC 3.3(a)(1)

---

[6]Although O'Connell did not provide a verified application or affidavits to the district court to support her request for attorney fees, the district court is not limited to considering affidavits in determining a reasonable amount of attorney fees. Further, despite the lack of an affidavit and based on O'Connell's representations in her application for fees, the district court could have sworn in counsel at the hearing to accept testimony supporting the fee request or possibly have taken judicial notice of certain facts. *See* NRS 47.130; NRCP 43(c) (indicating that when a motion is based on facts that are not in the record, the district court may decide the motion based on the affidavits presented or oral testimony); *Mardirossian*, 62 Cal. Rptr. 3d at 676 (accepting testimony from attorneys about the level of work required). We note, however, that in addition to any other potential evidence the district court may consider, O'Connell and other parties should

(prohibiting an attorney from making "a false statement of fact or law to a tribunal"); NRCP 11(b)(3) (indicating that, by submitting pleadings to the court, parties are certifying that the facts contained within the document "are likely to have evidentiary support"); *compare* NRS 18.110(1) (requiring a verified memorandum of costs) *with* NRS 18.010 (awarding attorney fees based on an agreement or statute, not a verified memorandum); *see also Mardirossian*, 62 Cal. Rptr. 3d at 676 (accepting testimony from attorneys about the level of work required); *Weber v. Langholz*, 46 Cal. Rptr. 2d 677, 683 (Ct. App. 1995) (noting that the trial court did not lack substantial evidence for an attorney fees award even though there were no time records or billing statements).

Furthermore, although NRS 18.010(3) dictates that a district court may award attorney fees with or without additional evidence, the district court's decision to require hourly billing records as a prerequisite to determine if the fee request was reasonable and justified was itself unreasonable as the court had presided over protracted litigation and witnessed a lengthy trial in which O'Connell overcame numerous challenges to prevail. *See Cooke*, 61 Nev. at 61, 114 P.2d at 89 (looking at "the reasonable value of plaintiff's services from all the facts and circumstances"). Importantly, where, as here, a district court observes an attorney successfully litigating in court, rarely should the court decide to award no attorney fees when evaluating if fees based on a contingency fee agreement are reasonable and justified in amount under the fourth *Beattie* factor, assuming the factors as a whole weigh in favor of an award. *See Frazier*, 131 Nev. at 644, 357 P.3d at 373.

provide district courts with affidavits or verified pleadings when seeking attorney fees awards.

Therefore, we conclude that, in this case, there were alternative sources of information for the district court to rely upon to determine whether the requested award was reasonable, even though hourly billing records were not provided. Thus, the district court should not have concluded that no attorney fees were warranted based on the absence of hourly billing records alone and without holding an evidentiary hearing or making a determination based upon all the information before it. Accordingly, the denial of attorney fees must be reversed and the matter remanded to the district court for further proceedings consistent with this opinion.

We note that the cases and methods used within this opinion to determine the amount of an attorney fees award are instructive and not exhaustive. Trial courts should also keep in mind that their awards of attorney fees should be made on a case-by-case basis by applying the considerations described herein to the evidence provided, and that an adequate record will be critical to facilitate appellate review. *Cf. Logan v. Abe*, 131 Nev. 260, 266, 350 P.3d 1139, 1143 (2015) (noting that while the district court has discretion, "the award must be supported by substantial evidence").

Ultimately a party seeking attorney fees based on a contingency fee agreement must provide or point to substantial evidence of counsel's efforts to satisfy the *Beattie* and *Brunzell* factors.[7] On remand, if O'Connell

---

[7]We note that the better—but not required—practice in a contingency fee case is for an attorney to keep hourly statements or timely billing records to later justify the requested fees. *See, e.g., Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1094 (5th Cir. 1982) (cautioning that representing a client on a contingency fee basis is not a valid excuse for failure to keep

cannot provide substantial evidence of the time reasonably spent on this case, the district court can exercise its discretion to adjust the fee accordingly, while also being mindful of all applicable considerations. *See Hsu*, 123 Nev. at 637, 173 P.3d at 733; *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (explaining, in using the lodestar method, that the district court may reduce an attorney fees award if the documentation of the hours reasonably expended on the litigation is inadequate). Counsel must show how their work helped accomplish the result achieved. Additionally, O'Connell's claim for attorney fees is limited to those fees earned post-offer.[8] *See* NRCP 68(f)(2).

On remand, the district court should consider the proposed amount of the attorney fees award based on the judgment and the contingency fee agreement and evaluate the requested award based on the work performed. The evidence does not need to be limited to documents and may include what the trial court readily observed.

---

time records), *overruled on other grounds by Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174, 1180-81 (5th Cir. 1986).

[8]On appeal, O'Connell concedes that her award should be limited to her post-offer fees. She estimates her request should accordingly be reduced to $71,111.11. Her contingency fee agreement, however, also provided for a 50-percent fee if she was successful on appeal. Additionally, we note that O'Connell did not retain the same counsel from the beginning of the case until the end, and thus her current counsel is not automatically entitled to fees based on the entire litigation. *Cf. Van Cleave v. Osborne, Jenkins & Gamboa, Chtd.*, 108 Nev. 885, 888, 840 P.2d 589, 592 (1992) (awarding attorney fees to the firm that more efficiently resolved a matter, regardless of the length of time of its representation, in comparison to the prior firm that litigated the same case for six years without resolution). We leave the consideration of these circumstances to the district court.

## CONCLUSION

Attorneys who represent a client on a contingency fee basis are not required to submit hourly billing records to support an award of attorney fees that are allowed by a valid agreement, rule, or statute. Because the district court incorrectly based its decision to deny fees, in part, on the second *Beattie* factor and on the failure to provide hourly billing records with regard to the fourth *Beattie* factor, we conclude that the district court abused its discretion in denying O'Connell's request. Accordingly, we reverse the district court's order as to its complete denial of O'Connell's request for attorney fees. We remand this matter for the district court to allow O'Connell a new hearing related to her attorney fees request, and then to address and reweigh the second, third, and fourth *Beattie* factors in light of this opinion. If the *Beattie* factors favor O'Connell, we direct the district court to determine a reasonable amount of attorney fees to award.

_____, J.
Gibbons

We concur:

_____, C.J.
Silver

_____, J.
Tao