140 Nev., Advance Opinion 14

## IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| VALLEY HEALTH SYSTEM, LLC, A NEVADA LIMITED LIABILITY CORPORATION, D/B/A CENTENNIAL HILLS HOSPITAL MEDICAL CENTER, Appellant, vs. DWAYNE ANTHONY MURRAY, INDIVIDUALLY, AS AN HEIR, AS GUARDIAN AND NATURAL PARENT OF BROOKLYN LYSANDRA MURRAY, AND AS SPECIAL ADMINISTRATOR OF THE ESTATE OF LAQUINTA ROSETTE WHITLEY-MURRAY, DECEASED, Respondent. | No. 79658

FILED

MAR 14 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK |
| VALLEY HEALTH SYSTEM, LLC, A NEVADA LIMITED LIABILITY CORPORATION, D/B/A CENTENNIAL HILLS HOSPITAL MEDICAL CENTER, Appellant, vs. DWAYNE ANTHONY MURRAY, INDIVIDUALLY, AS AN HEIR, AS GUARDIAN AND NATURAL PARENT OF BROOKLYN LYSANDRA MURRAY, AND AS SPECIAL ADMINISTRATOR OF THE ESTATE OF LAQUINTA ROSETTE WHITLEY-MURRAY, DECEASED, Respondent. | No. 80113 |
| VALLEY HEALTH SYSTEM, LLC, A NEVADA LIMITED LIABILITY CORPORATION, D/B/A CENTENNIAL HILLS HOSPITAL MEDICAL CENTER, Appellant, vs. | No. 80968 |

24-09078

DWAYNE ANTHONY MURRAY, INDIVIDUALLY, AS AN HEIR, AS GUARDIAN AND NATURAL PARENT OF BROOKLYN LYSANDRA MURRAY, AND AS SPECIAL ADMINISTRATOR OF THE ESTATE OF LAQUINTA ROSETTE WHITLEY-MURRAY, DECEASED,
Respondent.

Consolidated appeals from a district court judgment pursuant to a jury verdict and orders awarding attorney fees and costs in a medical malpractice action. Eighth Judicial District Court, Clark County; Joseph T. Bonaventure, Sr. Judge, and Jacqueline M. Bluth, Judge.

*Affirmed in part, reversed in part, vacated in part, and remanded.*

Pisanelli Bice PLLC and Jordan T. Smith, Las Vegas; Greenberg Traurig, LLP, and Tami D. Cowden and Kara B. Hendricks, Las Vegas, and Kendyl T. Hanks, Austin, Texas; Hall Prangle & Schoonveld, LLC, and Michael E. Prangle and Jonquil L. Whitehead, Las Vegas,
for Appellant.

Lewis Roca Rothgerber Christie LLP and Daniel F. Polsenberg and Abraham G. Smith, Las Vegas; The Gage Law Firm, PLLC, and David O. Creasy, Las Vegas,
for Respondents.

Hutchison & Steffen, PLLC, and Michael K. Wall, Las Vegas,
for Amicus Curiae Your Nevada Doctors.

Shook, Hardy & Bacon, LLP, and Jennifer Odell Hatcher, Kansas City, Missouri,
for Amici Curiae American Medical Association and Nevada State Medical Association.

---

BEFORE THE SUPREME COURT, EN BANC.[1]

## OPINION

By the Court, STIGLICH, J.:

LaQuinta Whitley-Murray passed away at Centennial Hills Hospital Medical Center during a sickle cell crisis. Respondent, on behalf of LaQuinta's estate and heirs, filed a negligence action against appellant Valley Health Systems, which operates Centennial Hills. A jury awarded respondent over $48 million in compensatory and punitive damages combined. Concluding respondent had prevailed under a theory of breach of fiduciary duty, the district court upheld the awards and declined to apply NRS Chapter 41A's statutory caps on damages in professional negligence actions.

We clarify that hospitals do not owe a fiduciary duty to their patients in connection with medical treatment. Accordingly, we vacate the compensatory damages awards and remand to the district court to apply the damages cap to the award of noneconomic damages and to reduce both

---

[1]The Honorable Elissa F. Cadish, Chief Justice, and the Honorable Patricia Lee, Justice, voluntarily recused themselves from participation in the decision of this matter. The Honorable Michael Cherry and the Honorable Abbi Silver, Senior Justices, have been assigned to participate in the determination of this matter in their places.

economic and noneconomic damages to the hospital's 65-percent pro rata share. And because respondent's breach of fiduciary duty claim against Centennial fails, we also reverse the award of punitive damages. We further vacate the award of prejudgment interest and remand for recalculation so that prejudgment interest is awarded solely on past damages. But we conclude that the district court did not abuse its discretion in awarding attorney fees and costs, and we accordingly affirm in that relevant part.

## PROCEDURAL HISTORY

Appellant Valley Health Systems operates Centennial Hills Hospital Medical Center. On April 20, 2013, LaQuinta Whitley-Murray was admitted to Centennial for a sickle cell crisis, complaining of extreme pain. The hospital pharmacy recommended ketorolac, a non-opioid pain medication better known as Toradol, in part because sickle cell disease increases the risk associated with opiate drugs. Toradol's "black box" insert warns that a daily dose should not exceed 120 mg to alleviate the risk of adverse reactions, including renal failure.

The attending physician ordered 30 mg of Toradol to be administered every six hours. Because Centennial's policy for administering non-time-sensitive medications, as Toradol was designated, allows nurses to administer the drug within one hour of the scheduled time, LaQuinta's dosage sometimes exceeded 120 mg per 24 hours. On April 24, LaQuinta went into cardiac arrest and passed away. She had suffered multiorgan failure, including renal failure.

Respondent Dwayne Anthony Murray, on behalf of LaQuinta's estate and heirs, filed a negligence action against Centennial, its staff, and the treating physicians. Notably, Murray alleged that hospital staff's treatment of LaQuinta fell below the standard of care and, before trial,

 

amended the complaint to allege that Centennial breached a fiduciary duty to LaQuinta by intentionally understaffing the hospital. At trial, Centennial's primary defense was that it had not breached the standard of care and that the Toradol had not caused LaQuinta's death, and both sides presented substantial expert testimony on those points.[2] Regarding breach of fiduciary duty, no witness testified that Centennial intentionally understaffed the hospital; to the contrary, testimony established that the hospital was not understaffed on the day LaQuinta died. During trial and particularly closing arguments, Murray argued for the first time that Centennial's medication administration policy was meant to increase the hospital's profitability to the patients' detriment. No discovery was conducted on the medication administration policy or on whether Centennial prioritized profits over patients, as Murray contended. The district court—over Centennial's objection—nevertheless allowed Murray's experts to criticize the policy.

The jury was presented a verdict form that first asked whether Centennial had breached the standard of care, proximately causing LaQuinta's death. The jury answered in the affirmative, awarding $16,210,000 in compensatory damages and apportioning 65-percent of the fault to Centennial. The verdict form then asked whether Centennial had intentionally breached its fiduciary duty to LaQuinta and instructed the jury to stop and sign the last page if it answered "NO." The jury also answered this question in the affirmative, as well as the next question regarding whether that breach was a proximate cause of LaQuinta's death, leading it to the final question: whether Centennial engaged in fraud,

---

[2]Senior Judge Bonaventure presided over the trial.

oppression, or malice toward LaQuinta. The jury also answered that question in the affirmative and thereafter awarded $32,420,000 in punitive damages.

The district court did not apply NRS 41A.035's cap on noneconomic compensatory damages, concluding the awards fell under the claim for breach of fiduciary duty, which did not sound in professional negligence and was not subject to that cap. Relying on Centennial's rejection of a pretrial offer of judgment from Murray, the district court awarded Murray $511,200 for attorney fees, $169,895.61 for expert witness fees, and $37,374.21 for other court costs.

Centennial separately appealed the judgment upon the jury verdict (Docket No. 79658), order awarding attorney fees (Docket No. 80113), and order awarding costs (Docket No. 80968). This court consolidated the appeals.

## DISCUSSION

Centennial does not contest the jury's negligence findings, instead primarily arguing that the district court erred by entering judgment for intentional breach of fiduciary duty because Nevada law does not support imposing a heightened fiduciary duty on hospitals in this context.[3]

---

[3]The American Medical Association and Nevada State Medical Association jointly filed an amicus brief supporting Centennial, arguing that caps on noneconomic damages rationally respond to rapidly rising noneconomic damages, Nevada enacted such caps to address a healthcare crisis caused by increasing liability costs, these caps have been effective in safeguarding available and affordable health care, and this court should not allow Murray to plead around Nevada medical liability laws and undermine their benefits. Your Nevada Doctors also filed an amicus brief supporting Centennial, arguing that Centennial does not owe a fiduciary duty to LaQuinta and that Nevada's policy of limiting liability for noneconomic

We agree and address that issue before addressing the application of NRS Chapter 41A and considering whether the punitive damages award was proper, the district court erred by awarding prejudgment interest on future damages, and the district court abused its discretion in awarding attorney fees and costs.[4]

*Nevada does not recognize a fiduciary duty owed by a hospital to a patient in the provision of medical services*

Centennial argues that Nevada law does not recognize a heightened fiduciary duty owed by a hospital to a patient in the administration of medicine and thus the district court erred in entering judgment against Centennial on Murray's claim for intentional breach of fiduciary duty. Murray responds that this court should recognize hospitals as fiduciaries that owe their patients a duty to establish and follow policies for the health and safety of patients.

Because the existence of a duty of care presents a question of law, we review the district court's decision de novo. *See Peck v. Zipf*, 133 Nev. 890, 892, 407 P.3d 775, 778 (2017); *Scialabba v. Brandise Constr. Co.*, 112 Nev. 965, 968, 921 P.2d 928, 930 (1996). A fiduciary relationship exists when one places heightened confidence in another such that the latter must then act in good faith and for the other's benefit. *See Long v. Towne*, 98 Nev. 11, 13, 639 P.2d 528, 529-30 (1982) (discussing the elements for a claim of constructive fraud). Although physicians may owe a duty of fiduciary

---

damages, medical malpractice liability, and punitive damages must not be defeated by creative lawyering.

[4]In view of our decision, we need not reach Centennial's alternate argument that NRS Chapter 41A should apply because the breach of fiduciary duty claim sounded in malpractice.

care to their patients in certain circumstances,[5] *cf. Hoopes v. Hammargren*, 102 Nev. 425, 431, 725 P.2d 238, 242 (1986), a majority of courts to consider the present issue have rejected the argument that hospitals likewise owe a fiduciary duty to patients. For example, a Mississippi federal district court recognized the fiduciary duty a doctor owed to a patient but distinguished that from the duties owed by a hospital, as the plaintiff emergency room patient failed to plead facts supporting "that she placed any special trust or confidence in" the hospital "beyond what is reasonably anticipated in an arms-length transaction." *Henley v. Biloxi H.M.A., LLC*, 489 F. Supp. 3d 580, 590-91 (S.D. Miss. 2020), *rev'd on other grounds*, 48 F.4th 350 (5th Cir. 2022). Without the patient demonstrating more in that particular instance, the relationship between an emergency room provider and a patient does not exhibit the degree of trust or confidence exceeding that of a routine business relationship in which parties must exercise simply reasonable care for each other. *Id.* at 590. Along these lines, the Arizona Court of Appeals rejected the reasoning that, because a "hospital is subject to the same

---

[5]We have previously recognized that the physician-patient relationship is based on an elevated level of trust and that a physician must accordingly exercise an elevated degree of good faith in acting in the patient's best interest. *Hoopes v. Hammargren*, 102 Nev. 425, 431, 725 P.2d 238, 242 (1986). This duty may be violated where a physician abuses the trust inherent in the physician-patient relationship to exploit the patient in a context distinct from providing medical services. *Id.* at 432, 725 P.2d at 243. In other circumstances, we have recognized a fiduciary duty in situations involving particular care and trust, such as a partnership or an agency relationship, *Bynum v. Frisby*, 73 Nev. 145, 149, 311 P.2d 972, 974 (1957), an attorney-client relationship, *see Stalk v. Mushkin*, 125 Nev. 21, 28, 199 P.3d 838, 843 (2009) (recognizing that an attorney has a fiduciary relationship with a client in connection with the duties of loyalty and confidentiality owed the client), or a marriage, *Williams v. Waldman*, 108 Nev. 466, 472, 836 P.2d 614, 618 (1992).

standard of care in a malpractice action as a doctor," and "because a doctor owes a patient a fiduciary duty," a hospital likewise "owes a patient a fiduciary duty." *Gonzales v. Palo Verde Mental Health Servs.*, 783 P.2d 833, 835 (Ariz. Ct. App. 1989).

Similarly, the California Supreme Court rejected the claim that a hospital owner, medical researcher, and two interested corporations owed a fiduciary duty to a patient and thus were obligated to obtain a patient's informed consent regarding a procedure, in contrast to the fiduciary duty owed by the patient's physician. *Moore v. Regents of the Univ. of Cal.*, 793 P.2d 479, 486 (Cal. 1990) (recognizing, however, that a hospital may be vicariously liable for a supervised physician's violation of that physician's own fiduciary duty to the patient). The Connecticut Supreme Court noted that professional negligence involved breaching a duty of care, while breaching a fiduciary duty involved violating a duty of loyalty and honesty, before concluding that "[t]he plaintiff has provided scant reason to conclude that a hospital owes a patient the duty of a fiduciary." *Sherwood v. Danbury Hosp.*, 896 A.2d 777, 797 (Conn. 2006). And a Louisiana federal district court rejected that any authority existed to support the proposition that such a fiduciary duty might arise from a healthcare-provider-and-patient contract between those parties.[6] *Harrison v. Christus St. Patrick Hosp.*, 430 F. Supp. 2d 591, 595 (W.D. La. 2006).

---

[6]Murray nevertheless relies on *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255 (3d Cir. 2008), to impliedly support the proposition that a hospital owes a patient a fiduciary duty. But Murray misconstrues *DiCarlo*. *DiCarlo* observed "that nonprofit hospitals owe a fiduciary duty to the public *with regard to staffing decisions*" to ensure that hospitals had adequate capacity to provide medical services before concluding that no fiduciary duty was owed to an individual patient in a billing context. *Id.* at 268-69 (emphasis

SUPREME COURT
OF
NEVADA

(O) 1947A

We agree with these courts. No authority supports a broad finding that hospitals owe patients a fiduciary duty. Further, recognizing a claim for breach of fiduciary duty against a hospital in relation to a patient's medical care would be duplicative, and therefore improper, where the allegation boils down to one of medical malpractice by the hospital. For example, the United States Supreme Court explained that a decision by an HMO physician that mixed the HMO's financial incentive with medical considerations and resulted in a negative patient outcome would not support a claim for breach of fiduciary duty, as "for all practical purposes, every claim of fiduciary breach by an HMO physician making a mixed decision would boil down to a malpractice claim, and the fiduciary standard would be nothing but the malpractice standard traditionally applied in actions against physicians." *Pegram v. Herdrich*, 530 U.S. 211, 234-35 (2000). The Colorado Court of Appeals likewise rejected as duplicative a fiduciary duty claim against a physician "because the same issue was before the jury in the context of plaintiffs' negligence claims." *Spoor v. Serota*, 852 P.2d 1292, 1294-95 (Colo. App. 1992); *see also Neade v. Portes*, 739 N.E.2d 496, 505 (Ill. 2000) (declining to recognize a fiduciary duty claim against a physician for failing to disclose financial incentives in a medical malpractice action and holding that "a breach of fiduciary duty claim is duplicative of a medical negligence claim" in such circumstances).

---

added). *DiCarlo* thus pertains to a hospital's obligation to ensure access to care to the public. It does not support the existence of a fiduciary duty owed by a hospital to an individual patient in connection with medical treatment. We have considered the other foreign authorities Murray proffers and observe that none directly supports the proposition that a hospital owes a fiduciary duty under these facts.

Here, Murray initially based the breach-of-fiduciary-duty claim on allegations of intentional understaffing, but at trial, Murray reversed course and argued what he failed to allege in his complaint: Centennial's medication administration policy prioritized profits over patient safety and constituted an intentional breach of fiduciary duty because the policy allowed staff to administer medication in violation of Toradol's black box warning. Upon concluding Centennial owed a heightened duty of care to LaQuinta by virtue of her status as a patient who came to the hospital with an expectation of being cared for, the district court upheld the full damages award on grounds that NRS Chapter 41A did not apply to a claim of breach of fiduciary duty. This was error in light of the majority view and the absence of any compelling authority to the contrary. Centennial owed LaQuinta the same duties that hospitals owe patients in providing medical services, that is, "to employ that degree of skill and care expected of a reasonably competent hospital in the same or similar circumstances." *Wickliffe v. Sunrise Hosp., Inc.*, 101 Nev. 542, 548, 706 P.2d 1383, 1388 (1985). It did not owe a heightened duty beyond that.[7]

*The compensatory damages award must be reduced*

As only the negligence claim remains, NRS Chapter 41A applies. Where relief is warranted for a claim sounding in professional negligence such as medical malpractice, the noneconomic compensatory damages that may be recovered are limited to $350,000.[8] NRS 41A.035

___

[7]Because we conclude that Centennial owed no such duty as a matter of law, we need not address Centennial's related evidentiary claim.

[8]Pursuant to recently enacted legislation, the amount of this cap will increase over time, beginning January 1, 2024. A.B. 404, 82d Leg., § 2 (Nev. 2023); 2023 Nev. Stat., ch. 493, § 2, at 3023.

SUPREME COURT
OF
NEVADA

(O) 1947A

(2015); 2015 Nev. Stat., ch. 439, § 3, at 2526. Noneconomic damages in this context refer to "damages to compensate for pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damages." NRS 41A.011. These are distinguishable from economic damages, which "include[ ] damages for medical treatment, care or custody, loss of earnings and loss of earning capacity." NRS 41A.007. And when a defendant is liable for professional negligence, it will be severally, not jointly, liable for both economic and noneconomic damages for the percentage of negligence attributable to it. NRS 41A.045(1).

The jury here found Centennial and its staff to be 65-percent liable. It awarded $5,000,000 for loss of companionship, comfort, and consortium; $7,000,000 for grief and sorrow; $1,700,000 for loss of probable support; $10,000 for funeral expenses; and $2,500,000 for LaQuinta's pain and suffering. Of these, loss of companionship, comfort, and consortium; grief and sorrow; and pain and suffering are noneconomic damages and are accordingly capped at an aggregate amount of $350,000. Centennial's liability is further limited severally to its share according to its 65-percent contribution to the negligence. Accordingly, we vacate the judgment's damages award for loss of companionship, comfort, and consortium; grief and sorrow; and pain and suffering and remand for the district court to issue a judgment awarding $227,500 in aggregate for these damages and to determine what portion of the $227,500 is attributable to each of those loss categories.[9] The damages for loss of support and funeral expenses are likewise subject to the pro rata cap, and we vacate that portion of the

---

[9]Given the reduction of damages to those allowable, we need not reach Centennial's contention that the award of $2,500,000 for pain and suffering was excessive.

damages judgment and remand for the district court to issue a judgment against Centennial awarding $1,105,000 for loss of probable support and $6,500 for funeral expenses.

*Punitive damages were improper*

Centennial argues the record does not support an award of punitive damages. We agree that the punitive damages award was improper. Critically, the verdict form allowed the jury to reach punitive damages only if the jury first determined Centennial breached a fiduciary duty. The district court later upheld that award on the ground that the medication administration policy supported the breach of fiduciary duty claim. But Murray did not plead facts regarding the medication administration policy in the amended complaint, instead alleging understaffing and raising the medication administration policy only during trial. Regardless, our determination that Centennial did not owe a fiduciary duty here precludes the punitive damages award, as under the verdict form the jury could not reach punitive damages if Centennial did not owe, and therefore could not breach, a fiduciary duty to LaQuinta. Accordingly, we reverse the punitive damages award without reaching the parties' arguments on this point.

*The district court erred in awarding prejudgment interest on the entire award, rather than the portion attributable to past damages*

Centennial argues that the district court erred in awarding prejudgment interest on future damages. Murray argues that this claim was waived because it was not timely raised and the district court accordingly did not consider it. If the claim is entertained, Murray asserts that the only future damages are those for grief and sorrow. Centennial replies that relief is nevertheless warranted for plain error. Again, we agree with Centennial.

Nevada law is clear: prejudgment interest cannot be awarded on future damages. *See* NRS 17.130(2) (stating that "the judgment draws interest from the time of service of the summons and complaint until satisfied, except for any amount representing future damages"). It is error to award prejudgment interest for the entire verdict when it cannot be determined what part of the verdict represents past damages. *Albios v. Horizon Cmtys., Inc.*, 122 Nev. 409, 428, 132 P.3d 1022, 1035 (2006). A defendant's challenge to the award of prejudgment interest, when raised for the first time on appeal, is reviewable under the plain error rule. *Id.* at 429, 132 P.3d at 1035 (reviewing sua sponte an award of prejudgment interest for plain error).

The jury here awarded a combination of past and future damages. It awarded past damages for LaQuinta's pain and suffering and funeral expenses. Damages for loss of companionship, comfort, and consortium and loss of support reflected future damages. *See* NRS 41.100(3). The grief and sorrow damages explicitly commingle "[p]ast and future grief and sorrow." The district court ordered prejudgment interest on the aggregate amount of compensatory damages and plainly erred in doing so. Accordingly, we vacate the award of prejudgment interest. Given that the award of noneconomic damages has been vacated and must be recalculated consistent with NRS 41A.035, on remand the district court must determine what portion of the noneconomic damages was attributable to pain and suffering and recalculate prejudgment interest as to LaQuinta's pain and suffering and funeral expenses. Also, we direct the district court to consider whether the damages for grief and sorrow may be separated into past and future damages in that regard and to recalculate and award prejudgment interest only as to the portion constituting past grief and

sorrow. Should the district court be unable to separate past and future grief and sorrow, it may not order prejudgment interest as to that portion of the damages.[10]

*The district court did not abuse its discretion in awarding attorney fees and costs*

Centennial argues that the district court should not have awarded more than $700,000 in attorney fees and costs. It argues that its refusal of LaQuinta's offer of judgment was not grossly unreasonable or in bad faith. It argues that the court should have credited its theories of defense in determining whether it rejected Murray's offer of judgment in good faith and that Murray's attorneys' hourly rates were not reasonable. Centennial also argues that Murray's experts' fees were unreasonable, considering that two experts opined on similar topics. We disagree.

Where a party rejects an offer of judgment and fails to obtain a more favorable outcome, the offering party may recover attorney fees and costs incurred after the offer was made. NRCP 68(f)(1)(B). In deciding whether to award attorney fees under NRCP 68, the district court must consider the factors set forth in *Beattie v. Thomas*, 99 Nev. 579, 588-89, 668 P.2d 268, 274 (1983):

> (1) whether the plaintiff's claim was brought in good faith; (2) whether the defendants' offer of judgment was reasonable and in good faith in both its timing and amount; (3) whether the plaintiff's

---

[10]Centennial alternatively argues that a new trial is warranted because the verdict was improperly the product of "passion and prejudice," highlighting the large awards for punitive damages and compensatory damages for pain and suffering. Given that our disposition reverses the punitive damages award and reduces considerably the compensatory damages for pain and suffering, we decline to reach this alternative argument.

> decision to reject the offer and proceed to trial was grossly unreasonable or in bad faith; and (4) whether the fees sought by the offeror are reasonable and justified in amount.

Where a plaintiff rather than a defendant makes an offer, the first factor looks to whether the defendant raises its defenses in good faith. *Yamaha Motor Co., U.S.A. v. Arnoult*, 114 Nev. 233, 252, 955 P.2d 661, 673 (1998). To determine whether the fees sought are reasonable with respect to the fourth *Beattie* factor, the court looks to the *Brunzell* factors:

> (1) the qualities of the advocate: his ability, his training, education, experience, professional standing and skill; (2) the character of the work to be done: its difficulty, its intricacy, its importance, time and skill required, the responsibility imposed and the prominence and character of the parties where they affect the importance of the litigation; (3) the work actually performed by the lawyer: the skill, time and attention given to the work; (4) the result: whether the attorney was successful and what benefits were derived.

*Brunzell v. Golden Gate Nat'l Bank*, 85 Nev. 345, 349, 455 P.2d 31, 33 (1969). Until the statutory limit in NRS 18.005(5) was raised in 2023, A.B. 76, 82d Leg., § 1 (Nev. 2023); 2023 Nev. Stat., ch. 70, § 1, at 342, recoverable costs to retain expert witnesses were limited to $1,500 per expert for up to five experts unless the court determined that the circumstances required allowing a larger fee, *Logan v. Abe*, 131 Nev. 260, 267, 350 P.3d 1139, 1144 (2015); *see* 2007 Nev. Stat., ch. 440, § 7(5), at 2191. We review the district court's award of attorney fees and costs for an abuse of discretion and will uphold an award supported by substantial evidence. *Logan*, 131 Nev. at 266-67, 350 P.3d at 1143-44.

The district court found that Centennial rejected an offer of judgment for $300,000 and did not obtain a more favorable outcome. The court specifically found that the *Beattie* and *Brunzell* factors warranted attorney fees. It found that the offer was in good faith and reasonable in light of the trial preparation that had already been undertaken at that time and that the rejection of the offer was unreasonable because Centennial knew the evidence supporting the claims and the substantial damages alleged. The court found that the attorney fees were justified and reasonable considering that counsel were experienced trial attorneys and that one of Murray's attorneys was also a board-certified medical doctor, who accordingly brought medical expertise to the representation. Further, the court found that the case was complex and heavily contested with extensive pretrial litigation and trial preparation and that counsel's work led to a substantial jury verdict. As to expert costs, the district court found that both doctors were highly qualified and needed to address different areas of medicine pertinent to the cause of death. The court found that their testimony was not duplicative, that their preparation required reviewing thousands of pages of medical records, that each expert spent a significant amount of time preparing and testifying, and that exceeding the $1,500 statutory amount was justified because the expert testimony was important to Murray's theory of the case. The district court awarded attorney fees in the amount of $511,200 and costs totaling $207,269.82, including expert fees of $169,895.61.

The record demonstrates that the district court considered the relevant standards and that substantial evidence supports the award of attorney fees and costs. *See id.* at 266, 350 P.3d at 1143 ("[T]he district court need only demonstrate that it considered the required factors, and the

SUPREME COURT
OF
NEVADA

(O) 1947A

award must be supported by substantial evidence."). Centennial has not shown to the contrary. Further, this matter required a nine-day jury trial in 2019 and ongoing appellate litigation to resolve. Had Centennial accepted Murray's good-faith offer of judgment in 2016, each party would have forgone considerable time and expense. *Cf. Dillard Dep't Stores, Inc. v. Beckwith*, 115 Nev. 372, 382, 989 P.2d 882, 888 (1999) (remarking that "[t]he purpose of . . . NRCP 68 is to save time and money for the court system, the parties and the taxpayers" and to "reward a party who makes a reasonable offer and punish the party who refuses to accept such an offer"). We conclude that Centennial has not shown the district court abused its discretion in awarding attorney fees and costs in the amounts ordered.

## CONCLUSION

A hospital does not owe a fiduciary duty to its patients in relation to medical care. Under NRS Chapter 41A, Centennial was liable for no more than $350,000 in noneconomic compensatory damages. The district court erred in awarding a larger sum. Further, both economic and noneconomic compensatory damages are limited to the hospital's 65-percent pro rata contribution to the negligence, given that the hospital is severally, not jointly, liable. We vacate the compensatory damages awards and remand to the district court to apply the damages cap to the award of noneconomic damages and to reduce both economic and noneconomic damages to the hospital's 65-percent pro rata share, that is, noneconomic compensatory damages totaling $227,500 and economic compensatory damages of $1,105,000 for loss of probable support and $6,500 for funeral expenses. Because we do not recognize a breach of a fiduciary duty claim between a hospital and a patient, we reverse the award of punitive damages that the jury awarded for that cause of action. We also conclude that the district court erred in awarding prejudgment interest on both past and

future compensatory damages and vacate on that ground, remanding for recalculation so that prejudgment interest is awarded solely on past damages. Lastly, considering the offer of judgment below, we conclude that the district court did not abuse its discretion in awarding attorney fees and costs and accordingly affirm the orders awarding fees and costs.

_____, J.
Stiglich

We concur:

_____, J.
Pickering

_____, J.
Herndon

_____, J.
Parraguirre

_____, J.
Bell

_____, Sr. J.
Cherry

_____, Sr. J.
Silver

SUPREME COURT
OF
NEVADA

(O) 1947A