**140 Nev., Advance Opinion 66**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| RUSSELL NEVINS, M.D.; R. NEVINS, M.D., LTD., A NEVADA PROFESSIONAL CORPORATION; AND NEVADA ORTHOPEDIC & SPINE CENTER, LLP, A NEVADA LIMITED LIABILITY PARTNERSHIP, Appellants, vs. MARILYN MARTYN, Respondent. | No. 85193   OCT 17 2024 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |
| RUSSELL NEVINS, M.D.; R. NEVINS, M.D., LTD., A NEVADA PROFESSIONAL CORPORATION; AND NEVADA ORTHOPEDIC & SPINE CENTER, LLP, A NEVADA LIMITED LIABILITY PARTNERSHIP, Appellants, vs. MARILYN MARTYN, Respondent. | No. 85247 |
| MARILYN MARTYN, Appellant, vs. RUSSELL NEVINS, M.D.; R. NEVINS, M.D., LTD., A NEVADA PROFESSIONAL CORPORATION; AND NEVADA ORTHOPEDIC & SPINE CENTER, LLP, A NEVADA LIMITED LIABILITY PARTNERSHIP, Respondents. | No. 85541 |

24-39153

RUSSELL NEVINS, M.D.; R. NEVINS, M.D., LTD., A NEVADA PROFESSIONAL CORPORATION; AND NEVADA ORTHOPEDIC & SPINE CENTER, LLP, A NEVADA LIMITED LIABILITY PARTNERSHIP,
Appellants,
vs.
MARILYN MARTYN,
Respondent.

No. 85596

Consolidated appeals challenging a district court judgment in a professional negligence action and post-judgment orders awarding attorney fees and costs and denying a motion for a new trial. Eighth Judicial District Court, Clark County; Jerry A. Wiese, Judge.

*Affirmed (judgment and order denying new trial), affirmed as modified (order awarding attorney fees), reversed in part (order awarding costs), and remanded.*

Rencher Anjewierden, PLLC, and Benjamin K. Lusty, Salt Lake City, Utah; McBride Hall and Robert C. McBride, Heather S. Hall, and Chelsea R. Hueth, Las Vegas,
for Russell Nevins, M.D.; R. Nevins, M.D., Ltd.; and Nevada Orthopedic & Spine Center, LLP.

Claggett & Sykes Law Firm and Micah S. Echols and David P. Snyder, Las Vegas; Gerald I. Gillock & Associates and Gerald I. Gillock and Michael H. Coggeshall, Las Vegas; Murphy & Murphy Law Offices and Craig M. Murphy, Las Vegas,
for Marilyn Martyn.

BEFORE THE SUPREME COURT, EN BANC.[1]

*OPINION*

By the Court, STIGLICH, J.:

In this opinion arising from an appeal in a professional negligence action, we delve into a variety of issues, including whether a res ipsa loquitur instruction was properly given to the jury when expert testimony was also provided; whether the NRS 41A.035 cap on damages for noneconomic losses applies to a professional entity; alleged juror misconduct; and whether a party may waive or contract around sections of a statute governing attorney fee awards. We hold that a vicariously liable professional entity cannot be held more liable than its principal and thus cannot owe more pain and suffering damages or attorney fees than its principal. We also conclude that attorneys may not waive or contract around the statutory limit for attorney fees in NRS 7.095. While we affirm the district court's judgment on the jury verdict and order denying a motion for a new trial, we affirm as modified the district court's order awarding attorney fees and reverse in part the district court's order retaxing costs, thus remanding this matter back to the district court for further proceedings as to expert witness fee costs.

*FACTS*

In 2009, Dr. Russell Nevins performed a revision right total shoulder arthroplasty on Marilyn Martyn. During this shoulder replacement surgery, Martyn suffered a fracture to her distal humerus. Nevins attempted to cement the fracture, but the cement extravasated

---

[1]The Honorable Linda Marie Bell, Justice, being disqualified, did not participate in the decision of this matter.

through the fracture in the distal humerus and caused a burning injury to Martyn's radial nerve, resulting in permanent radial nerve palsy.

Martyn sued Russell Nevins, M.D.; R. Nevins, M.D., Ltd.; and Nevada Orthopedic & Spine Center, LLP (collectively, appellants), alleging professional negligence. She contended that Dr. Nevins' negligence could be imputed to Nevins Ltd. and Nevada Orthopedic based upon vicarious liability and/or respondeat superior.

The case went to trial twice. Following the first trial, the jury found in favor of appellants. Martyn moved for a new trial due to juror misconduct, which the district court granted. Before the second trial, Martyn made two offers of judgment, first for $1,000,000 and later for $750,000. Appellants rejected both offers.

At trial, the district court gave the jury a res ipsa loquitur instruction, which informed the jury that the existence of an injury from an unintended burn caused by heat during medical care gave rise to a rebuttable presumption that the injury was the result of negligence. The jury found in favor of Martyn. Although the jury determined that damages were warranted in the amounts of $1,576,800 for past pain and suffering and $1,576,800 for future pain and suffering, the district court reduced the total amount for pain and suffering to $350,000 pursuant to NRS 41A.035. Including interest and other damages, the district court entered judgment awarding Martyn a total of $3,156,402.34. Martyn then requested attorney fees and expert costs. The court retaxed and awarded costs in part, capping Martyn's expert witness costs at $9,000 ($1,500 each for six expert witnesses) pursuant to NRS 18.005(5) (2007); 2007 Nev. Stat., ch. 440, § 7, at 2191. The court awarded $1,578,201.17 in attorney fees as well, reducing the 50% contingency fee agreed upon between Martyn and her counsel

pursuant to NRS 7.095, which applies to limit contingent fees in actions against health care providers, as to Nevins individually but not as to the entity appellants, such that only $545,126.85 of the total award could be collected from Nevins.

Following a post-trial interview with the jurors, appellants alleged that one of the jurors had been dishonest during voir dire and intentionally concealed that she was a patient of Nevada Orthopedic. They requested the juror's medical records and moved for a protective order based on HIPAA considerations so as to allow the presentation of the records as an exhibit. They also moved for a new trial based on the perceived juror misconduct. The district court denied both motions.

Martyn appeals, challenging the cap applied to the pain-and-suffering damages and the expert witness costs award. Appellants also appeal, challenging the res ipsa loquitur jury instruction, the denial of the request for a protective order, and the order denying the motion for a new trial based on juror misconduct. Appellants additionally challenge the orders awarding attorney fees and costs. We consolidated the appeals for disposition.

## DISCUSSION

*The district court did not abuse its discretion when it gave a res ipsa loquitur jury instruction*

Appellants argue that a res ipsa loquitur jury instruction concerning professional negligence is not available when a plaintiff designates an expert witness. They assert that the instruction provided to the jury impermissibly shifted the burden of proof from Martyn to them. They further contend that the 2015 amendments to NRS 41A.100(3) expressly bar res ipsa loquitur instructions when an expert witness is designated and apply retroactively because the statute is procedural,

Supreme Court
of
Nevada

(O) 1947A

clarifying, and remedial. We conclude that the district court did not abuse its discretion in giving a res ipsa loquitur jury instruction.[2]

We "review[ ] a district court's decision to give a jury instruction for an abuse of discretion or judicial error." *FGA, Inc. v. Giglio*, 128 Nev. 271, 280, 278 P.3d 490, 496 (2012). "[W]e review questions of statutory interpretation de novo." *State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011). The Legislature amended NRS 41A.100 in 2015. 2015 Nev. Stat., ch. 439, § 9, at 2528. Both the former and current versions of NRS 41A.100(1) state that a rebuttable presumption that an injury was caused by negligence arises in certain circumstances, including where "[a]n unintended burn caused by heat, radiation or chemicals was suffered in the course of medical care." *Id.*; NRS 41A.100(1)(c). The 2015 amendment added a subsection to the statute establishing that the rebuttable presumption does not apply when a plaintiff designates an expert witness to establish that a health care provider violated the standard of care. NRS 41A.100(3); 2015 Nev. Stat., ch. 439, § 9, at 2528. That is, for cases arising after the amendments were approved in 2015, a plaintiff cannot both obtain a res ipsa loquitur jury instruction and present an expert witness to establish negligence.

---

[2]Martyn and appellants argue throughout their briefs that the other waived the various claims raised on appeal. Having reviewed the briefs and record, we disagree, as each of the parties argues only issues that were presented below, including in a motion for reconsideration. *See Moretto v. Elk Point Country Club Homeowners Ass'n*, 138 Nev. 195, 198 n.1, 507 P.3d 199, 202 n.1 (2022) (concluding that an issue was preserved for appeal where it was raised in the briefing below); *Arnold v. Kip*, 123 Nev. 410, 417, 168 P.3d 1050, 1054 (2007) (holding that arguments are preserved for appeal where they are raised in a motion for reconsideration and considered on the merits), *disapproved of on other grounds by AA Primo Builders, LLC v. Washington*, 126 Nev. 578, 245 P.3d 1190 (2010).

"In Nevada, as in other jurisdictions, statutes operate prospectively, unless the Legislature clearly manifests an intent to apply the statute retroactively . . . . [W]hen the Legislature intends retroactive application, it is capable of stating so clearly." *Pub. Emps.' Benefits Program v. Las Vegas Metro. Police Dep't*, 124 Nev. 138, 154-55, 179 P.3d 542, 553 (2008). Here, the legislation specifically provides that "[t]he amendatory provisions of this act apply to a cause of action that accrues on or after the effective date of this act." 2015 Nev. Stat., ch. 439, § 11, at 2529.

We conclude that NRS 41A.100(3) is not retroactive, in line with our holding in *Segovia*, where we held that the 2015 bill that added NRS 41A.100(3) operated prospectively in amending another statute. *Segovia v. Eighth Jud. Dist. Ct.*, 133 Nev. 910, 915, 407 P.3d 783, 787-88 (2017). The provision in the enacting statute directing that the amendments become effective as to claims that accrue on or after the act's effective date indicates that the Legislature intended them to apply prospectively. Moreover, the 2015 enactment of NRS 41A.100(3) added a new subsection with a new rule regarding the rebuttable presumption and thus served to amend NRS 41A.100, rather than simply clarify it, which further supports prospective application. *See Delucchi v. Songer*, 133 Nev. 290, 296, 936 P.3d 826, 830 (2017) (Amendment to anti-SLAP statutes to change summary judgment standard of review substantively altered, rather than clarified, existing law, such that the amendment could not be applied retroactively). Because Martyn's claim accrued in 2009 and the 2015 amendments to NRS 41A.100 apply prospectively, the 2015 amendments did not apply, and therefore Martyn's use of an expert witness did not preclude giving a res ipsa loquitur jury instruction. Accordingly, we conclude that the district court did not

abuse its discretion when it gave a res ipsa loquitur instruction notwithstanding the expert testimony.

*A new trial was not shown to be warranted on the basis of juror misconduct*

Appellants argue that juror misconduct warrants a new trial because a juror concealed material information during voir dire. We conclude that the district court did not abuse its discretion in denying their motion for a new trial based on the allegations of juror misconduct presented.

The district court has discretion to determine whether a party has been prejudiced by juror misconduct such that a new trial is warranted. *Beales v. Hillhaven, Inc.*, 108 Nev. 96, 101, 825 P.2d 212, 215 (1992). To warrant a new trial for juror misconduct, the movant must present competent evidence establishing that juror misconduct took place and that the misconduct was prejudicial. *Meyer v. State*, 119 Nev. 554, 563-64, 80 P.3d 447, 455 (2003). Misconduct arising from the failure to answer a question during voir dire requires showing intentional concealment. *Hale v. Riverboat Casino, Inc.*, 100 Nev. 299, 305, 682 P.2d 190, 193 (1984), *abrogated on other grounds by Ace Truck & Equip. Rentals, Inc. v. Kahn*, 103 Nev. 503, 746 P.2d 132 (1987). Prejudice requires showing "a reasonable probability or likelihood that the juror misconduct affected the verdict." *Meyer*, 119 Nev. at 564, 80 P.3d at 455.

We conclude that appellants have not shown juror misconduct regarding Prospective Juror 307, who was ultimately empaneled. The juror stated during voir dire that she had had back surgery with nonparty Desert Orthopedic and added, "I have gone to Nevada Orthopedic & Spine. But none of these doctors—I don't recognize any of them." The district court asked if her dealings with the two offices would affect her "ability to be fair and impartial to both sides," and she responded, "I don't think so. I think I

SUPREME COURT
OF
NEVADA

(O) 1947A

can be fair." The court moved on to another prospective juror, and appellants declined to ask further questions when they had the opportunity to do so. Later in voir dire, the juror again told the court that she would be impartial in rendering a decision regarding professional negligence.

After trial, appellants alleged that the juror was an active patient of Nevada Orthopedic, having had an appointment seven months before trial. The district court held an evidentiary hearing and found that appellants did not show the juror intentionally concealed any information and that appellants failed to ask questions to elicit further detail regarding the juror's history with Nevada Orthopedic.

We conclude that the record supports the district court's finding that the juror did not intentionally conceal a relationship with these medical providers. While the juror did not describe herself as an active patient, she volunteered that she had been a patient of Nevada Orthopedic previously. The volunteered information about the past patient relationship weighs heavily against a finding of intentional concealment. Appellants have not shown that having an appointment with Nevada Orthopedic seven months before trial rendered any of the juror's statements intentionally false. We thus conclude that appellants have not shown juror misconduct. Further, appellants have not shown prejudice arising from whether this juror was an active or past patient of this medical provider. If that distinction posed a risk of material prejudice, appellants should have inquired into the matter during voir dire after the juror volunteered that she had a connection with the medical provider.[3] Their silence then

---

[3]Insofar as appellants contend that the district court should have granted their request for a protective order to present evidence supporting their allegation regarding the juror's patient status, we disagree. Not only

undermines their allegations of prejudice later. And moreover, the juror stated that she did not recognize any doctor in the case and would be fair and impartial—no evidence was presented to the contrary. We conclude that appellants have shown neither misconduct nor prejudice and therefore that the district court did not abuse its discretion in denying the motion for a new trial based on juror misconduct.

*The district court did not abuse its discretion in reducing Martyn's jury award for pain and suffering*

Martyn argues that the noneconomic damages award should not have been capped as to appellant professional entities. Martyn argues that the statutory noneconomic damages cap that applies should be the version in effect when the cause of action accrued in 2009, which applied a definition of health care providers that did not then include professional entities. Appellants counter that the 2015 amendments apply retroactively because they clarified the law and affected only remedies. Appellants also argue that professional entities are only derivatively liable under theories of vicarious liability, so appellant professional entities could not be liable to a greater extent than Nevins himself. We conclude that professional entities are subject to the cap when they are vicariously liable for a listed individual medical practitioner's negligence.

---

does this misconstrue the purpose of an NRCP 26(c) protective order, *see* NRCP 26(c)(1) (providing that a court may, for good cause, issue a protective order to protect "[a] party or any person from whom discovery is sought" from annoyance or embarrassment, among other reasons), but appellants fail to show that the evidence they sought to present regarding the juror's relationship with the medical provider would show prejudice. Accordingly, we conclude that the district court did not abuse its discretion in denying the request. *See Venetian Casino Resort, LLC v. Eighth Jud. Dist. Ct.*, 136 Nev. 221, 229, 467 P.3d 1, 7 (Ct. App. 2020) (reviewing an order denying a request for a protective order for an abuse of discretion).

NRS 41A.035(1) caps the amount of damages for noneconomic personal injury losses a plaintiff may recover against "a provider of health care" to $350,000.[4] At the time of Martyn's surgery in 2009, a "provider of health care" included individual medical practitioners, as well as a "medical laboratory director or technician, or a licensed hospital and its employees." NRS 41A.017 (2004). In 2015, the Legislature expanded the definition to also include a "clinic, surgery center, physicians' professional corporation or group practice that employs any such person [referring to identified individual medical practitioners] and its employees." 2015 Nev. Stat., ch. 439, § 2, at 2526.

We conclude that NRS 41A.035(1) applies to professional medical entities based on principles of vicarious liability. A vicariously liable party is held liable not because they have committed a breach of duty to the plaintiff, but because "of legal imputation of responsibility for another's tortious acts." Restatement (Third) of Torts: Apportionment of Liability § 13 cmt. c (Am. L. Inst. 2000). Under a joint and several liability scheme, each defendant is liable for the damages they caused, and a vicariously liable defendant is liable for the same amount as the principal. *McCrosky v. Carson Tahoe Reg'l Med. Ctr.*, 133 Nev. 930, 933, 408 P.3d 149, 152 (2017). Thus, "[v]icarious liability is related to but distinct from the concepts of several liability and joint and several liability." *Id.* at 932, 408 P.3d at 152.

Because appellant professional entities are vicariously liable for Nevins' tortious actions, appellant professional entities are equally as liable

---

[4]In 2023, the Legislature amended NRS 41A.035(1) such that the cap on noneconomic damages increases each year beginning on January 1, 2024. 2023 Nev. Stat., ch. 493, § 2, at 3023.

SUPREME COURT OF NEVADA

(O) 1947A

as Nevins. Thus, here, regardless of which version of NRS 41.017 applies, appellant professional entities' liability must be capped at the amount owed by Nevins. *See* NRS 89.060 (stating that professional entities do not modify the liability of a person involved in a professional service). Bifurcating the judgment so that appellant professional entities are responsible for a larger amount of damages than Nevins therefore creates an absurd result. Because professional entities' liability cannot exceed the liability of the principal and Nevins' liability is capped at $350,000 pursuant to NRS 41A.035(1), appellant professional entities also cannot be liable for more than $350,000. Accordingly, we conclude that the district court did not abuse its discretion in reducing the award for pain and suffering to $350,000 pursuant to NRS 41A.035.

*The district court did not abuse its discretion by awarding attorney fees based on its analysis of the* Beattie *and* Brunzell *factors*

Appellants argue that the district court failed to explain how the *Beattie v. Thomas*, 99 Nev. 579, 668 P.2d 268 (1983), factors warranted an award of attorney fees, noting that the court awarded fees even though it found the first and third *Beattie* factors favored them. They also argue that the attorney fees award punished reasonable behavior and thus violated NRCP 68. We conclude that the district court did not abuse its discretion in analyzing the *Beattie* factors because the district court analyzed each factor and the record supports its determinations.

"Under NRCP 68(a), either party may serve an offer of judgment to settle the matter" before trial. *Waddell v. L.V.R.V. Inc.*, 122 Nev. 15, 24, 125 P.3d 1160, 1165 (2006) (footnote omitted). If the offeree rejects an offer and fails to obtain a more favorable judgment at trial, NRCP 68(f)(1)(B) provides that the offeree may be required to pay an offeror's costs and fees, including "reasonable attorney fees." The district court must

SUPREME COURT
OF
NEVADA

(O) 1947A

12

weigh the *Beattie* factors when deciding whether to award attorney fees under NRCP 68. *Yamaha Motor Co., USA v. Arnoult*, 114 Nev. 233, 251, 955 P.2d 661, 672 (1998). The district court has discretion in weighing the *Beattie* factors and need not "make explicit findings as to all of the factors where support for an implicit ruling regarding one or more of the factors is clear on the record." *Schwartz v. Est. of Greenspun*, 110 Nev. 1042, 1049, 881 P.2d 638, 642-43 (1994). The four *Beattie* factors include

> (1) whether the plaintiff's claim was brought in good faith; (2) whether the defendants' offer of judgment was reasonable and in good faith in both its timing and amount; (3) whether the plaintiff's decision to reject the offer and proceed to trial was grossly unreasonable or in bad faith; and (4) whether the fees sought by the offeror are reasonable and justified in amount.

99 Nev. at 588-89, 668 P.2d at 274. "Where a plaintiff rather than a defendant makes an offer, the first factor looks to whether the defendant raises its defenses in good faith." *Valley Health Sys., LLC v. Murray*, 140 Nev., Adv. Op. 14, 544 P.3d 904, 912 (2024). As part of the fourth *Beattie* factor, a court considers the factors stated in *Brunzell v. Golden Gate National Bank*, 85 Nev. 345, 455 P.2d 31 (1969). *Id.* The *Brunzell* factors look to "the qualities of the advocate," "the character of the work," "the work actually performed," and "the result," such as "whether the attorney was successful." *Id.* at 349, 455 P.2d at 33 (emphasis omitted).

The district court must determine a reasonable amount for a party to recover attorney fees. *O'Connell v. Wynn Las Vegas, LLC*, 134 Nev. 550, 557-58, 429 P.3d 664, 670 (Ct. App. 2018). "[A] trial court can award attorney fees to the prevailing party who was represented under a contingency fee agreement, even if there are no hourly billing records to support the request." *Id.* at 558, 429 P.3d at 671; *see also Shuette v. Beazer*

SUPREME COURT
OF
NEVADA

(O) 1947A

*Homes Holdings Corp.*, 121 Nev. 837, 864, 124 P.3d 530, 549 (2005) (recognizing that an award of attorney fees may be based on a contingency fee). The court may also consider the length of time counsel represented a party and the length of a trial. *O'Connell*, 134 Nev. at 560, 429 P.3d at 672.

The district court here conducted both *Beattie* and *Brunzell* analyses, and we conclude that the record supports its findings. For the first *Beattie* factor, while the district court did not specifically address good faith, the record supports the proposition that appellants brought their defense in good faith because they produced evidence that the injury was incurred accidentally in the course of the routine procedure. As to the second factor, the record supports the finding that Martyn's offers of judgment were reasonable and in good faith, in both timing and amount. The offers were made between the first and second trials—when the parties had an opportunity to consider the strength of the claims and the defenses— and the evidence indicated that the damages at issue were substantial, such that the amounts of the offers of judgment were not unreasonable. As to the third factor, the record supports the finding that appellants' decisions to reject the offers of judgment were not grossly unreasonable or in bad faith. Appellants prevailed in the first trial, Martyn's claims and the material facts were unchanged, and the amount sought was substantial. And as to the fourth *Beattie* factor, the district court conducted a *Brunzell* analysis of the reasonableness of the fees sought and found that the analysis favored Martyn. Appellants argue that the record did not show the character of the attorneys' work and the work actually performed because Martyn did not submit evidence as to the time spent on the case. For both the character-of-the-work and work-performed factors, the record shows the district court's consideration of the amount of time spent on and legal skill

applied to the case because the court had overseen the case for a decade; knew that the attorneys had "spent hundreds, maybe thousands, of hours on behalf of their respective clients"; and noted the attorneys' high skill and performance. As to the outcome, the district court accurately observed that Martyn prevailed in the second trial. Taking into account the *Beattie* and *Brunzell* analyses, the district court concluded that an award of the requested fees was warranted.

We conclude that appellants have not shown that the district court abused its discretion in its *Beattie* and *Brunzell* analyses. The record supports the district court's findings, and the court was not required to enter more explicit findings. The court observed that several factors favored appellants but nevertheless that an award of attorney fees was reasonable under the circumstances. We thus conclude that the court acted within its discretion in weighing the factors as a whole and awarding attorney fees in Martyn's favor. *Cf. O'Connell*, 134 Nev. at 561, 429 P.3d at 673 ("[W]here, as here, a district court observes an attorney successfully litigating in court, rarely should the court decide to award no attorney fees when evaluating if fees based on a contingency fee agreement are reasonable and justified in amount under the fourth *Beattie* factor, assuming the factors as a whole weigh in favor of an award.").

*The district court erred in failing to apply NRS 7.095 to Nevins' professional entities*

In professional negligence actions against "providers of health care," NRS 7.095 limits the amount an attorney may charge pursuant to a contingent fee agreement. Appellants argue that the attorney fees assessed against appellant professional entities should be reduced pursuant to this statute because they constitute providers of health care. They further argue that a 50% contingency fee was not a reasonable attorney fee to award

SUPREME COURT
OF
NEVADA

(O) 1947A

against them. Martyn argues that appellants lack standing to challenge the contingency fee agreement between herself and her attorneys, that she waived the application of NRS 7.095 in the signed fee agreements, and that the district court was justified in awarding attorney fees based upon a 50% contingency fee agreement. We conclude that NRS 7.095 applies to professional entities and that the fees awarded here must be recalculated.

We review standing de novo. *Morency v. State, Dep't of Educ.*, 137 Nev. 622, 625, 496 P.3d 584, 588 (2021). As a threshold issue, "[t]he question of standing concerns whether the party seeking relief has a sufficient interest in the litigation." *Schwartz v. Lopez*, 132 Nev. 732, 743, 382 P.3d 886, 894 (2016). A party must show a personal interest in the litigation. *Id.* We conclude that while appellants do not have standing to challenge the contingency fee agreement between Martyn and her attorney, they may challenge the district court's application of NRS 7.095, as they are directly affected by the court's application of the NRS 7.095 cap. They therefore have standing in this regard.

We next conclude that Martyn cannot waive the application of NRS 7.095. Where a right is waivable, a party may waive that right if the waiver is knowing, voluntary, and intentional. *Lowe Enters. Residential Partners, L.P. v. Eighth Jud. Dist. Ct.*, 118 Nev. 92, 100, 40 P.3d 405, 410 (2002). Not all rights, however, are waivable. For instance, in reviewing a similar statute, a California appeals court has held that "[a] law established for a public reason cannot be contravened by a private agreement" when parties to a contingency fee agreement in a medical malpractice case tried to waive statutory provisions that were "intended to further a significant public policy." *Fineberg v. Harney & Moore*, 255 Cal. Rptr. 299, 300, 303 (Ct. App. 1989) (internal quotation marks omitted). Nothing in NRS 7.095

expressly permits a waiver of the fee limitations. NRS 7.095 limits the fees that may be charged, and the statute does not permit parties to contract around its limits. To the contrary, NRS 7.095(1) provides that "[a]n attorney shall not contract for or collect a fee contingent on the amount of recovery" that is greater than a certain enumerated percentage, depending on the amount recovered. *Cf. Washoe Med. Ctr. v. Second Jud. Dist. Ct.*, 122 Nev. 1298, 1303, 148 P.3d 790, 793 (2006) (observing that the use of "shall" denotes a mandatory provision). Furthermore, we align with the California Court of Appeal in concluding that NRS 7.095 serves a significant public policy and that its fee limitations may not be avoided by an attorney-client fee agreement. *Cf. Fineberg*, 255 Cal. Rptr. at 302-03. Accordingly, Martyn cannot waive the application of NRS 7.095.

Finally, we conclude that NRS 7.095 applies where attorney fees are sought to be recovered from professional entities. The version of NRS 7.095(1) applicable here limited fees to 40% of the first $50,000 recovered, 33.3% of the next $50,000 recovered, 25% of the next $500,000 recovered, and 15% of an amount that exceeds $600,000. NRS 7.095(1) (2009).[5] While NRS 7.095(4)(b) does not include professional entities such as Nevins' in its definition of "[p]rovider of health care" just as the version of NRS 41A.017 in effect did not, as discussed above, appellant professional entities are vicariously liable through the principal, Nevins. Separating Nevins' financial liability from appellant professional entities would ignore the entities' vicarious liability and create an absurd result, which we seek to avoid. *See City of Henderson v. Wolfgram*, 137 Nev. 755, 757, 501 P.3d 422, 424 (2021) (providing that this court will avoid statutory

---

[5]The parties do not contest that the version of NRS 7.095 in effect in 2009 applies.

SUPREME COURT
OF
NEVADA

(O) 1947A

interpretations that lead to absurd results). Accordingly, NRS 7.095 applies to professional entities that are vicariously liable for professional negligence.

Because NRS 7.095 applies to professional entities, the attorney fees award against appellant professional entities must be reduced. The 50% contingency fee agreement violates NRS 7.095. Applying the progressive thresholds of NRS 7.095(1) results in a total award of $545,126.85. The district court properly calculated this as to Nevins but erred in assessing a larger sum against appellant professional entities. Accordingly, we affirm the attorney fees award as modified, such that the total amount recoverable against appellants is $545,126.85.

*The district court did not abuse its discretion in applying both NRCP 68(f)(1)(B) and NRS 18.005(5) (2007) with respect to costs*

Martyn argues that the district court erred by conflating NRCP 68(f)(1)(B) and NRS 18.005 because they are independent bases for recovering expert costs. We disagree.

District court decisions awarding costs are reviewed for an abuse of discretion. *Bobby Berosini, Ltd. v. People for the Ethical Treatment of Animals*, 114 Nev. 1348, 1352, 971 P.2d 383, 385 (1998). "[T]he rules of statutory interpretation apply to Nevada's Rules of Civil Procedure." *Webb ex rel. Webb v. Clark Cnty. Sch. Dist.*, 125 Nev. 611, 618, 218 P.3d 1239, 1244 (2009). "When a statute is clear on its face, we will not look beyond the statute's plain language." *Washoe Med. Ctr.*, 122 Nev. at 1302, 148 P.3d at 792-93.

As noted, NRCP 68 functions to encourage settlement by penalizing a party who rejects an offer of judgment more favorable than the final outcome by imposing costs and fees. NRCP 68(f)(1)(B); *Beattie*, 99 Nev. at 588, 668 P.2d at 274. NRS 18.020 separately provides for an award of

costs to the prevailing party. *See* NRS 18.020(3) (providing that the prevailing party shall recover costs in a suit for damages that seeks more than $2,500); NRS 18.005 (defining costs for purposes of NRS 18.010 to 18.150). The applicable version of NRS 18.005(5) caps the amount of expert witness fees recoverable at $1,500 each for as many as five experts.[6] A district court cannot exceed the cap unless "circumstances surrounding the expert's testimony were of such necessity as to require the larger fee." NRS 18.005(5). *Frazier* discusses nonexhaustive factors to consider when a district court may award expert fees in excess of the cap under NRS 18.005. *Frazier v. Drake*, 131 Nev. 632, 650-51, 357 P.3d 365, 377-78 (2015). These factors include "the importance of the expert's testimony to the party's case; . . . the extent and nature of the work performed by the expert; . . . the amount of time the expert spent in court, preparing a report, and preparing for trial." *Id.* (footnote omitted).

We conclude that NRCP 68 does not conflict with NRS 18.005. First, the plain language of each does not conflict. NRCP 68(f) provides consequences for rejecting an offer of judgment but does not state a specific amount that the offeree must provide to cover the costs and expenses. Instead, the rule provides that the sum must be "reasonable." In contrast, NRS 18.005 provides specific caps for expert witness fees. A judge may apply NRCP 68(f), finding that one party owes the other attorney fees, costs, and expert fees and then turn to NRS 18.005 to determine whether the expert witness fees are capped and whether costs for more than five experts

---

[6]NRS 18.005(5) has since been amended to permit recovery of up to $15,000 per expert witness. Neither party argues that the new cap applies, and references to NRS 18.005 refer to the previous version. The amendment went into effect on July 1, 2023. 2023 Nev. Stat., ch. 70, § 1, at 342. In this case, the district court entered a final judgment on July 11, 2022.

SUPREME COURT
OF
NEVADA

(O) 1947A

may be awarded. When looking at NRS 18.005, the district court applies the *Frazier* factors to determine whether to grant the full amount of expert fees requested. Because a court may follow both the rule and the statute without any contradictions, there is no apparent conflict between the two based on the language therein.

A similar structure also exists in the attorney fees context. When a party offers a judgment based on NRCP 68(f)(1)(B), the district court turns to the *Beattie* and *Brunzell* factors to determine whether to grant attorney fees and the amount to grant. *Beattie*, 99 Nev. at 588-89, 668 P.2d at 274. NRCP 68(f) therefore supports the use of factors to determine whether to grant fees or costs. Because the *Frazier* factors similarly help the district court determine whether to grant expert fees in excess of the NRS 18.005 limits, the use of factors pursuant to NRS 18.005 does not conflict with NRCP 68.

Although we affirm that NRS 18.005 and NRCP 68 do not conflict, we conclude that the district court misapplied *Frazier* by summarily applying the factors. Under *Frazier*, the district court does not need to analyze all of the factors—just the factors relevant to that expert. 131 Nev. at 650-51, 357 P.3d at 377-78. Here, the district court noted each expert witness's role in the case, whether each witness warranted recovery, and whether exceeding the $1,500 cap was warranted. The district court, however, listed *Frazier* factors without explaining whether they supported recovery of expert fees in excess of the statutory cap. The lack of supporting explanation frustrates our review. The *Frazier* factors are a nonexhaustive list; each factor may not be pertinent in every instance. In this case, the district court should only use the factors relevant for each particular

 

situation and should support its determination with particularized reasoning.

Accordingly, we conclude that both NRCP 68 and NRS 18.005 apply here. Because the district court misapplied the *Frazier* factors in analyzing expert witness costs, the district court abused its discretion when it denied Martyn's request to award expert witness fees greater than $1,500, and we reverse in part the order retaxing and awarding costs and remand for further proceedings on the issue of expert witness fees pursuant to *Frazier*. When analyzing the *Frazier* factors, we direct the district court to forgo a summary application of the factors, to consider only the factors that directly apply, and to explain its determinations.

## CONCLUSION

We affirm the underlying negligence judgment against appellants. The district court did not abuse its discretion in giving a res ipsa loquitur jury instruction notwithstanding expert testimony on negligence because the cause of action accrued before the 2015 amendments to NRS 41A.100, and the district court did not abuse its discretion in reducing the pain-and-suffering damages pursuant to the cap in NRS 41A.035. We also affirm the district court's decision in denying the motion for a new trial based on juror misconduct. We affirm the district court's attorney fees award as modified, because relief is not warranted regarding the district court's *Beattie* and *Brunzell* analyses, but the district court abused its discretion in failing to apply NRS 7.095 to appellant professional entities. Finally, although NRS 18.020 does not conflict with NRCP 68(f)(1)(B), the district court abused its discretion in summarily applying the *Frazier* factors pursuant to NRS 18.020, and therefore further proceedings as to the expert witness fees are warranted. Thus, the damages judgment and order denying a new trial are affirmed, the order awarding

Supreme Court
OF
Nevada

(O) 1947A

attorney fees is affirmed as modified herein, and the order retaxing costs is reversed in part. Accordingly, this matter is remanded for further proceedings with respect to the expert witness fees.

_____, J.
Stiglich

We concur:

_____, C.J.
Cadish

_____, J.
Pickering

_____, J.
Herndon

_____, J.
Lee

_____, J.
Parraguirre